Argued and submitted January 3, affirmed February 28, 2001

# STATE OF OREGON,
## *Respondent,*

### *v.*

# CORINNE WEBER,
## *Appellant.*

# (PR034689; CA A107263)

19 P3d 378

Michael E. Rose argued the cause for appellant. With him on the brief was Steenson, Schumann, Tewksbury, Later & Rose, P.C.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Lipscomb, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals a judgment of conviction for speeding, ORS 811.100, based on a citation issued pursuant to the photo radar statute, ORS 810.438 to ORS 810.439 (1997).[1] She argues that: (1) the photograph and data generated by the photo radar unit were improperly admitted into evidence; (2) the statutory presumption that the registered owner of the vehicle was the driver at the time of the alleged infraction, ORS 810.439(1)(b) (1997), is unconstitutional; and (3) the delay of over a week between the speeding incident and the citation's issuance violated her due process rights. We affirm.

The facts are undisputed. At approximately 10:00 a.m. on September 23, 1997, Portland Police Officer Frolov was operating a photo radar unit on S.W. Barbur Boulevard and saw a burgundy station wagon that appeared to be speeding. The photo radar unit also detected and photographed the station wagon as speeding, and Frolov contemporaneously noted the color and type of vehicle corresponding to the frame number in his "Photo Radar Visual Observation Log."

At the end of his shift, Frolov placed the exposed film in a box at the police station where the photo radar vendor picks up exposed film for processing. Approximately five or six days later, Frolov received the citations generated from the photo radar data and the developed photographs with the time, date, and vehicle speed imprinted on them. Within that group was a citation alleging that defendant violated the prohibition against speeding, ORS 811.100, by driving 58 miles per hour in a 35 mile per hour zone, and a photograph of a woman driving a burgundy station wagon imprinted with the date, time, and 58 mile per hour speed. Frolov signed the citation on September 30, 1997, and defendant received the citation some time thereafter.

---

[1] Oregon Laws 1995, chapter 579, created the Photo Radar Demonstration Project for use in the cities of Portland and Beaverton. The statute was amended and permanently adopted by the 1997 Legislature. Or Laws 1997, ch 280; *see* ORS 810.438 to ORS 810.439 (1997). The statute was further amended in 1999, but the 1999 amendments did not change the relevant language.

Before trial, defendant filed a demurrer and alternative motion to dismiss the "photo radar citation." Defendant asserted, particularly, that the statutory rebuttable presumption that the registered owner of a vehicle was the driver at the time of the alleged infraction detected by photo radar, ORS 810.439(1)(b) (1997), unconstitutionally shifted the burden of proof and abrogated the presumption of innocence. The court overruled the demurrer and denied the motion.

At trial, Frolov testified that the woman in the photograph was defendant.[2] He also testified that he relied on the information imprinted on the photograph and the citation to attest to the actual speed of defendant's vehicle because he does not make a contemporaneous notation of each vehicle's speed in his observation log. Frolov testified that, while tracking vehicles with the photo radar unit, he is able to visually detect which vehicles are going faster than the speed limit and that, on the occasion in question, defendant's vehicle "visually appeared to be a vehicle traveling above the posted 35 mile per hour speed limit."

Defendant testified that she had no recollection of the incident and could not explain why she was driving on that road at that time and at that speed. She did not deny that she was the driver in the photograph or that she was the registered owner of the vehicle in the photograph.

At the close of the evidence, defendant moved for judgment of acquittal, arguing, *inter alia*, that the photo radar statutory scheme embodies an unconstitutional delay between the time of the alleged offense and the issuance of the citation. The trial court denied that motion, found defendant guilty, and assessed a $100 fine.

On appeal, defendant raises four assignments of error. In her first and second assignments, defendant argues that the court erred in admitting the photograph and testimony as to defendant's speed that was based on information

---

[2] Defendant was present at trial at the time of this testimony. *Cf. State v. Clay,* 160 Or App 438, 440, 987 P2d 517, *rev allowed* 329 Or 318 (1999) (where defendant did not appear at trial and police officer testified that he did not know the identity of the driver in the radar photo, state relied on statutory presumption that registered owner is driver of photographed vehicle to meet its burden of proof).

contained in that photograph. Second, defendant assigns error to the denial of her demurrer and motion to dismiss, which challenged the presumption in ORS 810.439(1)(b) (1997) that the registered owner is the driver of an offending vehicle. Finally, defendant assigns error to the denial of her motion for judgment of acquittal, arguing that the delay of more than a week between the time of the offense and issuance of the citation impaired her ability to defend herself. We address each assignment in turn.

■       Defendant first argues that the inscription on the photograph setting forth the speed of the vehicle was inadmissible hearsay and that Frolov's testimony as to the speed of defendant's vehicle, which was based on that inscription, was also inadmissible. The state responds that the inscription at issue is not hearsay as OEC 801 defines that term, and that the rationale for excluding hearsay statements does not apply. We agree with the state.

OEC 801 sets out the pertinent definitions for purposes of the hearsay rule:[3]

"(1)   A 'statement' is:

"(a)   An oral or written assertion; or

"(b)   Nonverbal conduct of a person, if intended as an assertion.

"(2)   A 'declarant' is a person who makes a statement.

"(3)   'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Defendant argues that the speed notation on the photograph is a "written assertion" under OEC 801(1)(a) and, thus, a statement. The state responds that hearsay is, by definition, a "statement made by [a] *declarant*," and, under OEC 801(2), a declarant must be a "person," not a machine. (Emphasis added.)

If the definition of "statement" in OEC 801 is read in isolation, defendant's argument is not implausible, given the

---

[3] Under OEC 802, hearsay is generally inadmissible, subject to exceptions enumerated in OEC 801 to OEC 806.

disjunctive "or" at the end of OEC 801(1)(a). However, when read as a whole, OEC 801 indicates that hearsay is an out-of-court statement, offered for the truth of what it asserts, and made by a declarant—who must, by definition, be a person. OEC 801(2). Here, even assuming that the photo radar inscription could be characterized as a "statement," it was generated by a machine, and not made by a person. The inscription here is an assertion not made by a person but by a machine. It is not hearsay.[4]

Defendant next argues that the court should have excluded the photograph on chain-of-custody grounds, because the state offered no evidence as to who picked up the film from the station, what happened to the film, how it was handled, or what was done to it prior to the citation and photograph being returned to the police station six days later.

■ We note initially that, in both civil and criminal proceedings, determining the adequacy of the foundation required to establish a chain of custody rests within the discretion of the trial judge. In *American Reciprocal Insurers v. Bessonette*, 241 Or 500, 405 P2d 529 (1965), the court considered a challenge to the introduction of pieces of water pipe that allegedly caused the plaintiff's losses when they burst. The defendant argued that the evidence was inadmissable because the plaintiff had not fully established a chain of custody. The court affirmed the trial court's ruling admitting the pipes:

> "The ruling was discretionary. The exactness of a proponent's accounting for the custody of exhibits must, necessarily, rest in the sound discretion of the trial judge. If the exhibits are of a questionable type, or if the environment from whence they come suggests reasons that would cause the court to have more than a mere captious doubt about the authenticity of the exhibits, or about their identity, or

---

[1] *Accord State v. Harris*, 25 Or App 71, 76, 547 P2d 1394, *rev den* (1976), *overruled on other grounds State v. Plankinton*, 62 Or App 554, 561, 661 P2d 1387, *rev den* 295 Or 297 (1983) (adopting majority rule that bloodhound tracking evidence is admissible despite hearsay concerns); Laird C. Kirkpatrick, *Oregon Evidence*, 462 (3rd ed 1996) ("Rule 801(2) defines declarant as a *person* who makes a statement. This definition makes clear that 'statements' by an animal, such as a bloodhound identifying the scent of a person, or a machine, such as a watch stating time, are not subject to the hearsay rule." (Emphasis added.)).

about changes in their condition, then the trial court may very well require a proponent to lay a substantial foundation for the receipt of the evidence. *See Keller v. Coca Cola Bottling Co.*, 214 Or 654, 662, 330 P2d 346 (1958). In the case at bar, however, there is no reason to infer that anyone tampered with the pipe, nor is there any reason seriously to doubt the authenticity of the exhibits. The trial court might have required the plaintiffs to describe in greater detail the chain of custody of the exhibits, but there was no error in receiving them under the circumstances revealed in this case." *Id.* at 505-06.

That same reasoning applies in this context as well. *Cf. State v. Anderson*, 242 Or 368, 374-75, 409 P2d 681(1966) (trial court is to consider the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of tampering, in determining whether "the proof shows with reasonable certainty that the article offered is the identical article taken from the accused").

■       Here, the trial court did not abuse its discretion in admitting the photograph. As noted, Frolov contemporaneously maintained a log of vehicles he perceived to be speeding. Although the photo radar film canister was out of police custody for several days while the film was being processed,[5] the photograph here, and the information displayed on that photograph, corresponded to Frolov's contemporaneous observations. The information regarding speed was imprinted on the negative at the moment the film was exposed,[6] and there is no indication that the vendor or

---

[5] Defendant asserts that that break in custody created an opportunity for tampering. However, the abstract potential for tampering does not establish that such tampering was likely. *See, e.g., State v. Winslow*, 3 Or App 140, 143, 472 P2d 852 (1970) ("[T]he trial court did not abuse its discretion in holding that this possibility [of tampering] was not so great as to vitiate the otherwise unchallenged showing that the exhibit was substantially in the same condition * * *.").

[6] There is no evidence of mechanical malfunction or improper operation that would affect the accuracy of the information imprinted on the photograph. Based on Frolov's description of the procedures he used to set up and calibrate the unit, the trial court explicitly found that the photo radar unit "was set up according to approved procedures, * * * [and] was operating correctly."

anyone else tampered with or in any way altered that information during processing.[7] Given the totality of the circumstances, the trial court was well within its discretion in determining that there was no appreciable likelihood of alteration or tampering and that no further foundation was required.

Defendant next assigns error to the trial court's denial of her pretrial demurrer and alternative motion to dismiss. In that demurrer, defendant argued that the photo radar scheme was unconstitutional in its entirety. ORS 810.439 (1997) provides, in part:

"(1) Notwithstanding any other provision of law, in the jurisdictions authorized to use photo radar:

"(a) A citation for speeding may be issued on the basis of photo radar if the following conditions are met:

"(A) The photo radar equipment is operated by a uniformed police officer.

"(B) The photo radar equipment is operated out of a marked police vehicle.

"(C) An indication of the actual speed of the vehicle is displayed within 150 feet of the location of the photo radar unit.

"(D) Signs indicating that speeds are enforced by photo radar are posted, so far as is practicable, on all major routes entering the jurisdiction.

"(E) The citation is mailed to the registered owner of the vehicle within six business days of the alleged violation.

"(F) The registered owner is given 30 days from the date the citation is mailed to respond to the citation.

"* * * * *

---

[7] At trial, defendant argued that the vendor had a financial motive to tamper with the photograph because the vendor is paid on a per-citation basis. However, that argument is undermined by Frolov's testimony indicating that the photo radar unit photographs only vehicles that it detects speeding. Every exposed negative sent to the vendor thus provides the basis for a citation, and the vendor has no incentive to do anything other than develop the film and generate a stack of citations based on the information imprinted on that film.

"(b)  *A rebuttable presumption exists that the registered owner of the vehicle was the driver of the vehicle when the citation is issued and delivered as provided in this section.*

"(c)  A person issued a citation under this subsection may respond to the citation by submitting a certificate of innocence * * * or any other response allowed by law.

"(2)  A citation issued on the basis of photo radar may be delivered by mail or otherwise to the registered owner of the vehicle or to the driver.

"(3)(a)  If a registered owner of a vehicle responds to a citation issued under subsection (1) of this section by submitting a certificate of innocence within 30 days from the mailing of the citation swearing or affirming that the owner was not the driver of the vehicle and a photocopy of the owner's driver license, the citation shall be dismissed." (Emphasis added.)

In support of her demurrer and alternative motion to dismiss, defendant asserted that the statute unconstitutionally "creates presumptions, shifts the burden of proof, permits a police officer to file an accusatory instrument against a person whom he or she has no reasonable suspicion has committed any offense, compels a suspect to waive his right against self-incrimination and is violative of the separation of powers doctrine." The court denied defendant's demurrer and motion to dismiss.

On appeal, defendant focuses on the rebuttable presumption set out in ORS 810.439(1)(b) (1997) and contends that that presumption unconstitutionally shifts the burden of proof of the identity of the offender. The state responds that, because the traffic violation charged in this case is not a criminal offense, the constitutional protections invoked by defendant do not apply, and that, even if they did, the rebuttable presumption is constitutional.[8] For the reasons that follow,

_____

[8] A similar but legally distinct challenge was raised in *Clay*, where the defendant asserted that, in invoking the statutory presumption, "the trial court erred by shifting the burden of proof." 160 Or App at 443. We held that the trial court had not erred because the statute provided for precisely such a shift. The parties in *Clay* did not challenge the statutory presumption on constitutional grounds, and our resolution rested on strictly statutory grounds. *Id. Clay*, therefore, is not dispositive of the constitutional issue defendant seeks to raise here.

we do not reach the merits of defendant's constitutional arguments.

We reiterate the procedural posture at trial and on appeal: Defendant attempted to raise the constitutional challenge to the statutory presumption via a demurrer and an alternative "motion to dismiss." On appeal defendant assigns error to the denial of the demurrer and the alternative motion to dismiss.

Defendant could not properly challenge the constitutionality of the presumption contained in ORS 810.439(1)(b) (1997) by way of demurrer. A defendant may demur to an accusatory instrument when, *inter alia*, "it appears upon the face thereof * * * that the facts stated do not constitute an offense." ORS 135.630. Such a motion challenges the constitutionality of a statute the defendant *is accused of violating* on the grounds that such a statute is incapable of providing the basis for a conviction. *See, e.g., State v. McKenzie*, 307 Or 554, 560, 771 P2d 264 (1989) ("If a statute is constitutionally too vague, then the facts alleged in an indictment under such a statute do not and cannot constitute an offense.").

Here, the accusatory instrument, the traffic citation, simply alleged that defendant violated ORS 811.100, the basic speed rule.[9] The citation does not even refer to the photo radar statutes. Nowhere on the face of the citation is there any indication that the citation was based on evidence obtained by means of photo radar, and it would have been error for the court to consider that fact in ruling on the demurrer. *State v. Reed*, 116 Or App 58, 840 P2d 723 (1992) (error for court to sustain defendant's demurrer on the basis of facts not alleged in the complaint). Thus, defendant's challenge is not, and cannot be, to the facial sufficiency of the charging instrument. Rather, defendant's challenge is to the constitutionality of provisions pertaining to the manner of proving the charged offense.

---

[9] ORS 811.100 provides, in part, that: "A person commits the offense of violating the basic speed rule if the person drives a vehicle upon a highway at a speed greater than is reasonable and prudent * * *." A speed in excess of any posted speed is *"prima facie* evidence of a violation of the basic speed rule under ORS 811.100." ORS 811.105.

Defendant's position here is, thus, analogous to that in *State v. Barker,* 140 Or App 82, 914 P2d 11 (1996), where the defendant argued that "the facts on which he expects the state to rely at trial are insufficient to prove the crime charged." *Id.* at 84. We held that that argument was "premature and does not provide a basis for sustaining a demurrer." *Id.* So too here. Defendant's demurrer sought, improperly, to challenge the sufficiency of the state's anticipated proof—including the constitutionality of reference to, and reliance on, the rebuttable statutory presumption. That issue was not properly raised by demurrer and, thus, is not properly before us on review of the denial of the demurrer. Because the citation was facially sufficient,[10] the court properly denied the demurrer.

Similar analysis applies to the denial of defendant's alternative "motion to dismiss." Oregon law provides for motions to dismiss on a range of grounds. *See, e.g.,* ORS 135.470 (former jeopardy); ORS 135.745 to ORS 136.750 (precharge delay and speedy trial); *State v. Nelson,* 166 Or App 189, 194, 999 P2d 1161 (2000) (prosecutorial vindictiveness).[11] However, we are unaware of any Oregon authority by which a pretrial "motion to dismiss" can be employed to challenge the sufficiency of the state's anticipated proof of a charge. *See State v. Huffman,* 49 Or App 823, 826, 621 P2d 78 (1980) (dismissal inappropriate remedy when officer exceeded his authority in serving summons outside his jurisdiction). Indeed, to permit such a challenge by a pretrial "motion to dismiss" would contradict and subvert the principle expressed in *Reed.* The trial court did not err in denying the "motion to dismiss."

---

[10] The complaint alleges that defendant was driving 58 miles per hour where the posted speed limit was 35 miles per hour. The complaint is facially sufficient if defendant cannot admit the truth of that allegation and still be innocent of the offense of speeding under ORS 811.100. *Barker,* 140 Or App at 84; *cf. State v. Young,* 161 Or App 507, 512, 985 P2d 835 (1999), *rev den* 329 Or 590 (2000) ("[E]ven if defendant were to admit to every fact in [the indictment], he would still be innocent of any offense.").

[11] ORS 153.048(2) provides for a "motion to set aside" a traffic citation when the citation does not conform to certain requirements of form and context. That statute was enacted after the filing of the demurrer and alternative motion to dismiss in this case. *See* Or Laws 1999, ch 1051, § 14.

In so holding, we emphasize that there *are* procedures by which a defendant can challenge the constitutionality of a rebuttable presumption. The issue can be raised by motions *in limine*, seeking to preclude or restrict a presumption's application, or by objections to evidence during trial. *Cf. State v. Rainey*, 298 Or 459, 693 P2d 635 (1985) (in criminal case, issue of improper use of an evidentiary presumption raised by challenge to jury instructions). In addition, in most cases in which the state's only proof of the presumed fact—here, the driver's identity—is the presumption itself, the constitutional availability of the presumption may be raised via a motion for judgment of acquittal.[12]

■ ■ In sum, defendant's demurrer and alternative "motion to dismiss" were insufficient to raise, and preserve, her constitutional challenge to ORS 810.439(1)(b) (1997). Defendant's assignment of error, which is exclusively to the denial of the demurrer and "motion to dismiss" is similarly deficient. Consequently, we affirm the trial court's disposition of those matters without reference to defendant's unpreserved constitutional challenge.[13]

■ Defendant finally assigns error to the denial of her motion for judgment of acquittal, arguing that the delay of more than a week between the time of the offense and issuance of the citation violated her due process rights under the Fourteenth Amendment to the United States Constitution. She argues that the delay impaired her ability to defend herself because she could no longer remember where she was going or why she was speeding. That delay, defendant

---

[12] Where, however, other evidence of the presumed fact is presented (for example, Frolov's identification of defendant in this case as the person in the photograph) a motion for judgment of acquittal is properly denied in that there would be other evidence sufficient to support the verdict.

[13] The state suggests that defendant may have preserved her constitutional challenge for review by way of her motion for judgment of acquittal. The state is mistaken. *See State v. Wyatt*, 331 Or 335, 345-46, 15 P3d 22 (2000) (party's concession of preservation does not confer authority on appellate court to consider unpreserved claims of error). Here, although defendant did assign error to the denial of her motion for a judgment of acquittal, *see* discussion below, 172 Or App at 715-16, her argument in support of that assignment pertains solely to the alleged unlawful precharging delay. In all events, the motion for judgment of acquittal could not preserve the constitutional issue because the state's proof of identity at trial was not limited to reliance on the presumption. *See* 172 Or App at 715 n 12.

argues, is "inherent in the photo radar process itself" because an alleged offender is not stopped at the time and, thus, has no occasion to fix the incident in her mind by the presence of "lights sirens and [a] looming officer." Defendant's argument is, in essence, that her lack of recollection impairs her ability to defend herself.

■ For a precharging delay to give rise to due process violation, "a defendant must show both substantial prejudice to his right to a fair trial and that the delay was done intentionally to gain a tactical advantage." *State v. Dike*, 91 Or App 542, 544, 756 P2d 657, *rev den* 306 Or 660 (1988) (citing *State v. Serrel*, 265 Or 216, 507 P2d 1405 (1973)). Even assuming that a defendant in traffic court can validly assert due process rights under the Fourteenth Amendment to the United States Constitution,[14] defendant has failed to establish that any such violation occurred here. There is, on this record, no indication that the state intentionally delayed issuing the citation to gain a "tactical advantage"; rather, the record shows that Frolov issued the citation as soon as he received the developed photographs just seven days later. The trial court did not err in denying defendant's motion for judgment of acquittal based on precharge delay.

Affirmed.

---

[14] *Cf. Clay*, 160 Or App at 442 n 2 (noting that traffic infraction cases do not give rise to the same constitutional concerns raised in criminal cases).