Argued and submitted April 19, Crook County High School, Prineville; affirmed August 29, appellant's petition for reconsideration filed September 12 and respondent's response to appellant's petition for reconsideration filed November 14 allowed by opinion December 26, 2007
See 217 Or App 384, _____ P3d _____ (2007)

### STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

### JEFFREY A. RUGGLES,
*Defendant-Appellant.*

Jackson County Circuit Court
042569MI; A127538

167 P3d 471

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Paul L. Smith, Assistant Attorney General.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe, Judges.

SERCOMBE, J.

## SERCOMBE, J.

Defendant appeals from a conviction for driving while under the influence of intoxicants (DUII), ORS 813.010. He asserts two reasons why the trial court erred in admitting into evidence a laboratory report showing that his blood alcohol content exceeded the statutory benchmark on the night of his arrest. Defendant argues that the state established an insufficient evidentiary foundation for the report because the state did not adequately prove the chain of custody of the blood sample extracted from him between the time of the taking of the sample and its testing. Defendant also argues that the admission of the report without the testimony of the technicians who performed the tests of the blood sample violates his rights to confront witnesses under the state and federal constitutions. Neither contention is correct. The judgment of conviction is affirmed.

The factual context is straightforward. While driving a motor vehicle, defendant violated a traffic law and was detained by Potter, a City of Ashland police officer. Because he appeared to be intoxicated, the officer arrested him for the crime of DUII. Defendant refused the Intoxilyzer breath test and requested a test of his blood for alcohol content.

The police brought defendant to Ashland Community Hospital. A certified phlebotomist, McGraw, drew a sample of defendant's blood, sealed the specimen into two vials, and placed them into a locked container for transport to Oregon Medical Laboratories (OML), a private, certified laboratory. An OML employee, Barker, received the specimens and brought them to the toxicology forensics laboratory, where they were transferred to Hooker, a toxicology laboratory worker. Hooker verified receipt of the samples and placed them in a refrigerator. She later gave one of the specimens to Gordon for a prescreening test to detect the presence of alcohol. Gordon broke the seal, conducted the preliminary test, and released the main vial back to Hooker for refrigeration. An OML technologist, Peters, then withdrew a portion of the blood sample (an aliquot sample) from the vial for further testing. The aliquot sample was set aside for testing by Charles, a technologist, and then tested by Moppa, another technologist. The sample was tested by a flame ionization

detector in a gas chromatograph. The detector generated a printout of information about the content of the aliquot sample. OML maintained a chain of custody report for both the original samples and the aliquot sample.

The chain of custody reports, testing printouts, and other records were reviewed by two certifying scientists, Irford and Mollahan. Mollahan testified as follows:

> "As a certified scientist, I review to make sure, number one, all of the quality assurance is followed, that the data is correct, that the controls are in, the chain of custodies are correct, [and] all of the procedures are followed until [the results] can be released."

Mollahan prepared and certified a summary report of the results of the OML testing. The report identified the sample, stated a "positive" result for screening and "ethanol positive at 0.113 g/dL" as "confirmed by gas chromatography." Mollahan signed the report, attesting that it had been "reviewed by" him as the "certifying scientist."

Before trial, defendant moved *in limine* for an order "denying introduction of the State's proposed evidence regarding [defendant's] blood sample." McGraw and Mollahan testified on the blood draw, chain of custody, blood test, and summary report at the pretrial hearing. Defendant argued that the summary report was testimony by all persons who had handled his blood specimens, that he was entitled to cross-examine those witnesses, and that the failure to produce the witnesses and admission of the report violated his confrontation rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Defendant also asserted that the OML report was inadmissible without chain of custody testimony from each handler of the blood sample. The pretrial court denied defendant's motion *in limine*, with leave to raise those issues again at trial.

The next day, defendant renewed his objections before the trial court, which also ruled against defendant's motion:

> "THE [TRIAL] COURT:    [Defense Counsel], it's my ruling that the motion will be denied. The Court of Appeals is

going to have to tell me that this documentation isn't adequate to authenticate the sample, because I believe it is. I mean millions of people rely on this kind of information when they send their blood off to a lab to get it tested for medical purposes, and they depend on it with life issues. And I believe that the authentication has been adequate for purposes of the law in this case. So I'm denying your motion."

■       On appeal, defendant assigns error first to the trial court's denial of his motion to exclude the test results. Defendant claims that admission of that evidence without the opportunity to cross-examine the OML technicians violates Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. In response, the state argues that there is no violation of either constitutional provision. Because the OML report was certified by Mollahan, who testified at the motion *in limine* hearing and at trial, defendant had the opportunity to and did cross-examine the declarant of the OML report.

Second, defendant argues that the trial court abused its discretion by admitting the OML report without requiring the state to prove the chain of custody of the blood samples through the testimony of each person who possessed the specimens. The state contends that no abuse of discretion occurred; the evidence of the chains of custody for the blood sample and the aliquot sample was sufficient, at least in the absence of evidence that defendant's blood samples were tampered with or mishandled.

■■       Addressing first the chain of custody requirements, this court reviews a trial court's ruling on the adequacy of a foundation for the admission of evidence for an abuse of discretion. *State v. Anderson*, 242 Or 368, 375, 409 P2d 681 (1966). In either civil or criminal proceedings, whether an adequate foundation is established by a "chain of custody rests within the discretion of the trial [court]." *State v. Weber*, 172 Or App 704, 709, 19 P3d 378 (2001). As explained in *Weber*:

"The exactness of a proponent's accounting for the custody of exhibits must, necessarily, rest in the sound discretion of the trial judge. If the exhibits are of a questionable type, or

if the environment from whence they come suggests reasons that would cause the court to have more than a mere captious doubt about the authenticity of the exhibits, or about their identity, or about changes in their condition, then the trial court may very well require a proponent to lay a substantial foundation for the receipt of evidence."

*Id.* at 709-10 (quoting *Amer. Recip. Insurers v. Bessonette*, 241 Or 500, 505-06, 405 P2d 529 (1965)).[1]

Similarly, *State v. Owens*, 207 Or App 31, 139 P3d 984 (2006), *rev den*, 342 Or 503 (2007), concerned the foundation requirements for admission into evidence of a blood alcohol content report. The court noted:

"Showing that the blood sample was a valid blood draw from defendant involves laying a traditional chain of custody foundation, which is the purpose served by the officers' proffered testimony. As the state points out, evidence of the blood collection method and blood sample handling is pertinent to a factfinder's assessment of the weight, but not the admissibility, of the chemical test result."

*Id.* at 41.

■ McGraw and Mollahan testified at the pretrial hearing and during the trial about the practices and procedures used by Ashland Community Hospital and OML in the extraction, processing, and testing of blood samples. McGraw and Officer Potter further testified about the extraction of blood from defendant and its transport to OML. McGraw and Mollahan referred to business records of each institution that corroborated the chains of custody after defendant's blood was drawn. There was no equivocation in the testimony or twist in the paper trail to suggest dereliction in the keeping of defendant's blood. OML is certified as a laboratory by the State of Oregon, the federal government, and the College of American Pathologists. It is the business of the laboratory to be fastidious in the identification of blood samples. As the

---

[1] *Fox v. Olsen*, 87 Or App 173, 741 P2d 924, *rev den*, 304 Or 405 (1987), is not to the contrary. In *Fox*, the trial court excluded the results of a blood test in a paternity case because of a "monumental gap in the chain of custody" for lack of an "affidavit or live testimony of the laboratory person who transferred the blood to a tray from which the results were read." *Id.* at 175 n 1. That ruling was upheld because "[t]he exactness of proof of chain of possession rests in the sound discretion of the trial court." *Id.* The same principle holds true here.

trial court recognized, "millions of people rely on this kind of information when they send their blood off to a lab to get it tested for medical purposes, and they depend on it with life issues." In that context, and in the absence of evidence that suggests untrustworthiness, the trial court did not abuse its discretion in concluding that the foundational testimony of those witnesses was sufficient under OEC 901.[2]

■■ Defendant's constitutional claims depend in part on whether the testing report speaks in the voices of absent witnesses about evidence of defendant's guilt or whether it is only an iteration of Mollahan's testimony. Defendant claims that the report substituted for the testimony of OML technicians who shepherded the blood samples through the testing process. He contends that, without that live testimony at trial, the admission of the report violated his right "to meet the witnesses face to face" under Article I, section 11, of the Oregon Constitution or his right "to be confronted with the witnesses against him" under the Sixth Amendment to the United States Constitution. Both constitutional guarantees limit the admissibility of out-of-court statements or declarations against a criminal defendant unless the declarant is unavailable to testify at trial. Under the state constitutional limitation, the admissibility of the evidence also depends on whether it has "adequate indicia of reliability." *State v. Moore,* 334 Or 328, 334, 49 P3d 785 (2002).[3] The federal guarantee precludes the testimony of an unavailable witness when the evidence is "testimonial" in character, unless the

---

[2] OEC 901(1) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OEC 901(2)(a) offers an illustration of this requirement of identification or authentication as "[t]estimony by a witness with knowledge that a matter is what it is claimed to be." In this case, Mollahan's identification of the report assessing defendant's blood alcohol content was based on his knowledge of the OML protocols, review of the chains of custody documentation, and examination of the results generated by the testing chromatography that was used.

[3] After this case was briefed, the Supreme Court decided *State v. Birchfield,* 342 Or 624, 631-32, 151 P3d 216 (2007), which held that "admission of * * * laboratory report without requiring the state to produce at trial the criminalist who prepared the report or to demonstrate that the criminalist was unavailable to testify violated defendant's right to confront the witness against him under Article I, section 11, of the Oregon Constitution." The parties filed supplemental memoranda addressing the relevance of *Birchfield,* and we find that it has limited application given our disposition here.

defendant had a prior opportunity for cross-examination of the witness. *Crawford v. Washington*, 541 US 36, 53-54, 124 S Ct 1354, 158 L Ed 2d 177 (2004).

■     The constitutional provisions work to limit the introduction of hearsay testimony. Whether the admission of Mollahan's testimony offends defendant's rights to confront witnesses depends, in the first instance, on whether it is hearsay evidence. OEC 801(3) defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Mollahan's testimony, however, was not about what an out-of-court declarant said; it was about what a testing machine indicated. That testimony was not hearsay.

After testifying about the receipt of defendant's blood sample and the nature of the tests performed on that sample, and identifying the report as a statement of the result of those tests, Mollahan testified that the "final test resulted at ethanol positive at 0.113 grams per deciliter." Mollahan stated that he "reviewed the final data before [the report] was released and stamped." Later, Mollahan testified that he "looked at all of the results" of the tests. His oral testimony and written report, then, were statements made at trial and offered in evidence to prove the truth of his own observations—the content of readings generated by a machine. There were no other markings or designations from any other OML employee on the report to attribute the statement of result to an out-of-court declarant.

This court addressed a similar issue in *Weber*. There, a photo radar unit produced a picture of the defendant driving a car and a notation of the speed of the automobile on the photograph. The defendant challenged the reception of the picture into evidence as hearsay under OEC 801(3). This court held:

> "However, when read as a whole, OEC 801 indicates that hearsay is an out-of-court statement, offered for the truth of what it asserts, and made by a declarant—who must, by definition, be a person. OEC 801(2). Here, even assuming that the photo radar inscription could be characterized as a 'statement,' it was generated by a machine, and not made

by a person. The inscription here is an assertion not made by a person but by a machine. It is not hearsay."

*Weber*, 172 Or App at 709; *see also State v. Norman*, 203 Or App 1, 6, 125 P3d 15 (2005), *rev den*, 340 Or 308 (2006) (certifications of Intoxilyzer calibrations are "evidence about the accuracy of a test result arrived at by a machine," whose admission into evidence does not implicate the Confrontation Clause).

The written report was not a hearsay statement, and defendant's cross-examination of Mollahan satisfied his constitutional rights to confront witnesses.

Affirmed.