Submitted September 30, 2014, affirmed April 13, petition for review denied October 20, 2016 (360 Or 465)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL THOMAS SUMMERS,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF110089; A152471

371 P3d 1223

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

ORTEGA, P. J.

In this criminal appeal, defendant challenges his convictions and sentence for first-degree burglary, felon in possession of a firearm, first-degree theft, unlawful possession of methamphetamine, driving under the influence of intoxicants (DUII), pointing a firearm at another, and menacing. He raises seven assignments of error in which he challenges the court's entry of an amended judgment, raises four claims of evidentiary error, and contends that the trial court should have granted his motion for judgment of acquittal on the two counts of pointing a firearm at another. We reject without further discussion defendant's first assignment of error, challenging the entry of an amended judgment, and write to address the remainder of his assignments, rejecting all of them. Accordingly, we affirm.

We begin with some factual background, stating the facts in the light most favorable to the state, the prevailing party. *State v. Munoz-Juarez*, 271 Or App 261, 262, 350 P3d 516 (2015). A witness observed defendant's truck weaving on the highway before flipping over several times. Trooper Sharp from the Oregon State Police and Deputy Dunlap from the Umatilla County Sheriff's Office responded to the incident, but defendant had fled the scene by the time the officers arrived. Sharp detected a strong alcohol odor coming from the truck and was informed by Dunlap that defendant had federal warrants for his arrest. The officers set out to search for defendant. They borrowed a snowmobile to follow defendant's tracks in the snow, which led them to a cabin. They noticed defendant crouching down, aiming a rifle in their direction.[1] The officers drew their guns, told defendant to drop his weapon, and fired at him. Defendant slumped over and dropped the rifle.

Following defendant's arrest, police seized evidence from the scene, including the rifle and a glass pipe found inside defendant's jacket, which later revealed methamphetamine residue. Further investigation revealed that

[1] Sharp testified that he noticed that defendant had "a good cheek-to-stock weld" and figured that defendant "was aimed right at [him]." Dunlap similarly testified that he observed that defendant "had the gun shouldered like you would if you were hunting" and that it was "obviously a rifle" that was "pointed in [their] direction."

defendant had stolen the rifle, a muzzleloader,[2] from the cabin. Police also learned that the rifle was missing a "nipple," which prevented it from working.

A grand jury indicted defendant for first-degree burglary (Count 1), ORS 164.225; felon in possession of a firearm (Count 2), ORS 166.270; two counts of unlawful use of a weapon (Counts 3 and 4), ORS 166.220; first-degree theft (Count 5), ORS 164.055; unlawful possession of methamphetamine (Count 6), ORS 475.894; driving under the influence of intoxicants (Count 7), ORS 813.010; two counts of pointing a firearm at another (Counts 8 and 9), ORS 166.190; and two counts of menacing (Counts 10 and 11), ORS 163.190. A jury acquitted defendant on the two counts of unlawful use of a weapon and found him guilty on all the remaining counts.

On appeal, defendant argues that the trial court erred by allowing the testimony of two previously undisclosed witnesses, by admitting evidence of the methamphetamine pipe and a report about it without establishing a proper chain of custody for the pipe, and by denying his motion for judgment of acquittal on the counts of pointing a firearm at another.

We first address defendant's second and third assignments of error, in which defendant asserts that the court erred by admitting the testimony of two evidence technicians. We begin by recounting additional procedural facts.

Prior to the start of trial, defendant's counsel noticed that the state's witness list included three witnesses whose names and statements were not previously disclosed to defendant: Laura Minthorn, Keith Kerr, and Michael

---

[2] The owner of the rifle described the muzzleloader as "a gun they used to use back in the old days and Daniel Boone and all that." He indicated that the rifle ejects a round bullet, about the size of a thumb. As to how the rifle works, the owner stated:

"You don't actually put any kind of a bullet in it. You put powder in it, a certain amount of powder, and then you take the—call it a wad. You put that in and then you put a round ball, a .50 caliber ball.

"You jam that all down in there and stuff it down in there with this rod. Then you have to put a cap on the end up here * * *. Then you pull it back and shoot it, and it shoots out a whole bunch of black smoke."

Hurbes. Defendant objected to those witnesses, noting that they were not listed in the state's pretrial motion to allow for the subpoena of more than 10 witnesses, ORS 136.570, nor were they listed in the court's order granting that motion. That is, defendant claimed that the state had failed to satisfy the procedural requirements of ORS 136.570.[3] Defendant also argued that the state had violated the applicable discovery statutes because none of the technicians' names had been included on the witness lists previously disclosed by the state. Defendant argued that those violations prejudiced him because he did not have time to prepare for those witnesses. He insisted that the proper remedy should be to exclude the witnesses.

The state responded that exclusion was not warranted under either basis asserted by defendant. First, a failure to comply with ORS 136.570 does not require exclusion of witnesses; rather, according to the state, the statute's purpose is to facilitate issuance of subpoenas—to ease the process for the court and process servers—and not to facilitate discovery. Second, the state argued that, although it had not disclosed the witnesses during discovery, defendant had notice of them because two of them were "prominently" identified in police reports. The state withdrew the third witness, Hurbes, and argued that defendant would not be prejudiced if the remaining two were allowed to testify, given that their testimony would only serve to establish chain of custody and would not require a lot of preparation time by defendant's counsel.

The court denied defendant's request to exclude the witnesses, stating:

"I do think that [ORS 136.570] does require the district attorney * * * if they're asking for more than ten witnesses, to justify the issuance of subpoenas for witnesses additionally over the number ten.

"I don't necessarily agree that it requires a complete listing of every witness who's going to be called, but only the ones who are over the number of ten.

---

[3] Defendant acknowledged that he had not objected to the state's pretrial motion, stating, "Originally I didn't object, because the standing for objecting to this type of motion is a little bit unclear because there is no case law on point."

"In light of the State's concession with regard to Mr. Hurbes, I do agree that if he has appeared nowhere in the discovery, he should not be called.

"However, it appears that there's been plenty of notice of Laura [Minthorn] and Keith Kerr, and I am going to allow that."

When it came time for Kerr to testify at trial, defendant renewed his motion to exclude the witness after discovering that he had not received all of the reports related to that witness before trial. The court allowed Kerr to testify about anything that had been previously disclosed to defendant, but ordered that anything else had to wait until after defendant's counsel had had an opportunity to review the evidence and meet with the witness. Although the court adjourned early to allow for that meeting, defendant made a subsequent motion to strike Kerr's testimony, which the court denied. Minthorn testified and was cross-examined by defendant at trial without objection. However, *after* she first testified, defendant also moved to strike her testimony, but the motion was denied. Minthorn was later recalled to clarify her testimony as needed.

On appeal, defendant contends that the trial court erred in allowing Kerr and Minthorn to testify. As he did below, he argues that ORS 136.570 requires that witnesses be excluded whenever a party fails to follow the proper procedures, because the statute's purpose is to ensure a fair trial. He also argues that the state violated ORS 135.815, which requires the timely disclosures of witnesses' names, as well as any of their written or recorded statements. Defendant claims that the state's failure to disclose the names of Kerr and Minthorn amounted to a discovery violation, obligating the court to exercise its discretion to impose an appropriate sanction. He cites *State v. Harshman*, 61 Or App 711, 658 P2d 1173 (1983), for the proposition that, even if the court declined to exclude the witnesses, it could have granted a continuance or chosen an alternative remedy.

The state likewise reprises its arguments, maintaining first that it did not violate ORS 136.570 and that, even if it did, violations of that statute do not entitle a defendant to exclusion of witnesses. We understand the state's

position to be that defendant had no standing to be heard on the state's motion to subpoena additional witnesses and, as such, was not entitled to a remedy. The state notes that ORS 136.570 does not expressly provide for *any* remedy, much less an exclusionary one.

The state further argues that the trial court properly concluded that exclusion of the witnesses was unwarranted as a discovery sanction. Though the state concedes, as it did below, that it violated ORS 135.815 by failing to include Kerr and Minthorn on its pretrial witness list, it asserts that the trial court accepted that concession but allowed the witnesses to testify *despite* the discovery violation, properly addressing the resulting prejudice to defendant. The state further points out that defendant did not ask the court to consider any other, less onerous sanctions as alternatives to excluding the witnesses and, consequently, did not preserve that claim of error.

We begin with defendant's contention that the challenged witnesses should have been excluded due to the state's failure to comply with the requirements of ORS 136.570. We review the trial court's interpretation of the statutory requirements for legal error. *State v. Urie*, 268 Or App 362, 363, 341 P3d 855 (2014).

ORS 136.570 provides:

"If either party in a criminal action desires more than 10 witnesses, * * * application therefor shall be made to the court or judge thereof by motion for an order allowing the issuance of subpoenas for such additional witnesses, which motion shall be supported either by the statement of the district attorney or city attorney in writing or by the affidavit of the defendant. The statement or affidavit shall state the names of such witnesses, their places of residence and the facts expected to be proved by each of them. The court or judge thereof shall make an order allowing the issuance of subpoenas for so many of such witnesses as appear from such statement or affidavit to be necessary and material to a fair, full and impartial trial."

Assuming, without deciding, that the state failed to comply with the requirements of that statute, we conclude that a violation of ORS 136.570 does not provide a basis for exclusion

of the challenged witnesses. The statute does not provide for an exclusionary remedy, and defendant does not point to any other authority requiring exclusion under that statute. Without such authority, the trial court could not have excluded the challenged witnesses based on a violation. *See* ORS 136.432 (providing that a "court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision" unless required by the state or federal constitutions, the rules of evidence, or the rights of the press); *State v. Baker/Jay*, 232 Or App 112, 125 n 6, 221 P3d 749 (2009), *rev den*, 348 Or 280 (2010) ("We have not identified any statute establishing an exclusionary remedy for a violation of the statutes relating to subpoenas of witnesses."). Therefore, we conclude that the trial court did not err by rejecting defendant's request to exclude the challenged witnesses on that basis.[4]

We next consider whether the court erred by failing to exclude the witnesses based on the discovery violation that the state concedes it committed. When a party fails to comply with the discovery statutes, "the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, * * * or enter such other order as it considers appropriate." ORS 135.865. "By the terms of ORS 135.865, broad discretion is conferred upon the trial court in the choice of sanctions to be imposed in the event of a failure to disclose the names of witnesses in a criminal case." *State v. Wolfe*, 273 Or 518, 524, 542 P2d 482 (1975). Thus, we review the court's choice

---

[4] The Supreme Court, addressing a defendant's rights under ORS 136.570's predecessor statute, *former* ORS 139.060 (1956), *renumbered as* ORS 136.570 (1973), likewise concluded that the statute did not afford an exclusionary remedy—or any remedy—to defendants:

"The final assignment of error complains of an order of the court directing subpoenas to issue for more than five witnesses on behalf of state as provided in ORS 139.060. Defendant says that the district attorney's showing in support of the application for the order as to the facts expected to be proved by the witnesses is insufficient. But this is no concern of the defendant's. He was not entitled to be heard on the application, the order was not a ruling against him and could not prejudice him unless it is to be said that to permit the state to prove its case is prejudicial to the defendant."

*State v. Reyes*, 209 Or 595, 638, 308 P2d 182 (1957).

of sanction for abuse of discretion. *State v. Lindquist*, 141 Or App 84, 89, 917 P2d 510 (1996).

When considering whether precluding a witness from testifying is an appropriate sanction, "the trial court must always consider the presence or absence of prejudice in deciding what sanction to impose upon either party," but "the trial court is not necessarily precluded by an absence of prejudice from imposing upon either party the sanction of 'refu(sing) to permit the witness to testify.'" *State v. Dyson*, 292 Or 26, 36, 636 P2d 961 (1981). In the absence of prejudice, preclusion may also be warranted if it facilitates the administration of justice. *See id.* Nevertheless, such sanction "should be imposed only when no lesser sanction would accomplish the aim of the statute." *State v. Mai*, 294 Or 269, 277, 656 P2d 315 (1982).

Beginning with Kerr's testimony, we note that the court did not merely allow Kerr to testify; it ordered the state to limit his testimony to what had previously been disclosed, and, it adjourned early to allow defendant's counsel to meet with Kerr. The record does not reveal any prejudicial effect caused by Kerr's testimony that was not otherwise addressed by the court's order, nor does it suggest that the exclusion of that testimony would have facilitated the administration of justice in some way. We conclude that the court did not abuse its discretion by allowing Kerr's testimony to the extent that it did.

The record likewise does not support a conclusion that defendant was so prejudiced by the discovery violation that allowing Minthorn's testimony was outside the range of allowable discretion, especially when considering that the court allowed Minthorn to be recalled to clarify her testimony as necessary to address defendant's concerns. Unlike in *Harshman*, where the defendant had expressed willingness to accept a continuance in lieu of preclusion of the witness, 61 Or App at 715, defendant here did not propose any lesser sanction or otherwise advance his current argument that the court should have considered other sanctions. *See also State v. Nistler*, 268 Or App 470, 489, 342 P3d 1035 (2015) (stating that, where defendant's counsel was reasonably alerted to the prospect of the "surprise" witness's

testimony, a "continuance—*if defendant had sought one instead of insisting on outright preclusion*—surely would have been sufficient to allow defense counsel to meet the 'surprise' expert testimony in this case; thus, outright preclusion of that testimony would not have been a legally supportable sanction" (emphasis added; footnote omitted)).

Before proceeding to defendant's fourth and fifth assignments of error, we next turn to his sixth and seventh assignments of error, in which he asserts that the trial court erred in admitting a glass pipe and a report authored by Calvin Davis into evidence. To address those assignments of error, we briefly recount additional procedural facts.

From the record, it appears that the pipe was collected, sent to the crime lab for testing, returned to Oregon State Police (OSP) lockers, then sent back to the crime lab for retesting,[5] and returned once more to the OSP lockers. As witnesses at trial, the state called Minthorn, the evidence technician who had bagged the pipe and transported it to and from the crime lab, and Davis, the OSP forensic scientist who performed the second chemical analysis test on the pipe. Davis summarized his findings—that the pipe contained methamphetamine residue—in his official report, which the state also introduced at trial. Defendant objected to the introduction of the physical pipe and Davis's report, claiming that, because the state was unable to produce the scientist who performed the first test on the pipe, there was a gap in the chain of custody.

On appeal, defendant reprises his argument that the court should have excluded the evidence due to the gap in the chain of custody. According to defendant, the pipe was likely tested when it was first sent to the crime lab, which "could have significantly affected the substances on the pipe before it was returned." He contends that the gap in information about what happened to the pipe when it was first sent out also could have had an impact on Davis's report. Ultimately, defendant argues that, because the state failed to establish that the pipe was in substantially the same

---

[5] The forensic scientist who first tested the pipe was apparently on vacation and unavailable during trial, which prompted the state to order retesting by a scientist who could be available as a witness.

condition the second time it was tested, the court abused its discretion in failing to exclude the evidence.

Conversely, the state asserts that the record contains sufficient evidence to support the court's admission of the exhibits, arguing that the trial court had broad discretion whether to admit such evidence into the record. The state notes that defendant failed to identify anything in the record to call into question the authenticity of the pipe or to suggest that the witnesses who handled the evidence or the procedures used to test it were untrustworthy.

In criminal and civil cases, "determining the adequacy of the foundation required to establish a chain of custody rests within the discretion of the trial judge." *State v. Weber*, 172 Or App 704, 709, 19 P3d 378 (2001). Thus, we review a trial court's ruling for abuse of discretion. *State v. Ruggles*, 214 Or App 612, 616, 167 P3d 471, *adh'd to as modified on recons*, 217 Or App 384, 175 P3d 502 (2007), *rev den*, 344 Or 280 (2008).

"[O]rdinarily when an object is taken from the defendant for the purpose of testing and passes through the hands of several persons a foundation for its admission into evidence must be laid by the testimony of each person who had possession or custody of the article[.]" *State v. Anderson*, 242 Or 368, 374, 409 P2d 681 (1966). The purpose of that foundation is to allow a court to determine whether the evidence is in substantially the same condition as when the crime was committed, based on the nature of the evidence, the circumstances surrounding the preservation and custody of the evidence, and the likelihood of tampering. *Id.* at 375 (relying on *Gallego v. United States*, 276 F2d 914 (9th Cir 1960)). A court may require a more substantial foundation in cases where the "'exhibits are of a questionable type, or if the environment from whence they come suggests reasons that would cause the court to have more than a mere captious doubt about the authenticity of the exhibits, or about their identity, or about changes in their condition.'" *Ruggles*, 214 Or App at 616-17 (quoting *Weber*, 172 Or App at 709-10). Ultimately, a court may allow the introduction of the evidence if it determines that there is a reasonable probability that the evidence has not been changed in important

respects. *Anderson*, 242 Or at 375. As noted, that determination is reviewed for abuse of discretion.

In this case, although the lack of testimony about what happened when the pipe was first sent out to be tested represents a gap in the chain of custody, defendant has not explained why that gap implies that the evidence was no longer in substantially the same condition and, therefore, would have required its exclusion. The fact that the pipe had to be retested due to the unavailability of the scientist who first tested it does not, alone, indicate that the pipe had been changed in important respects. We have previously rejected the assumption urged by defendant, that a gap in the chain of custody necessarily implies a substantial change. In *State v. Winslow*, 3 Or App 140, 143, 472 P2d 852 (1970), we stated:

> "There is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with the article sought to be introduced in evidence. The defendant was free to argue and the jury was free to infer that someone might have tampered with [the evidence] * * *. However, the trial court did not abuse its discretion in holding that this possibility was not so great as to vitiate the otherwise unchallenged showing that the exhibit was substantially in the same condition * * *."

(Internal citations omitted.) Also, in *Weber*, 172 Or App at 710-11, we stated that "there [was] no indication that the vendor or anyone else tampered with or in any way altered that information during processing. Given the totality of the circumstances, the trial court was well within its discretion in determining that there was no appreciable likelihood of alteration or tampering and that no further foundation was required." (Footnote omitted.) Under the circumstances presented here, the court did not abuse its discretion in concluding that the foundation for the evidence presented was sufficient to allow its admission.

Lastly, we turn to defendant's fourth and fifth assignments of error in which he contends that the trial court erred by denying his motions for judgment of acquittal for both counts of pointing a firearm at another, ORS

166.190. Defendant argues that, under ORS 136.445[6] and the Due Process Clause of the Fourteenth Amendment to the United States Constitution,[7] he may be convicted only upon sufficient proof. He claims that his statutory and constitutional rights were violated because the state failed to adduce sufficient evidence that the victims in this case were "within range" of the rifle to support a conviction under ORS 166.190, which provides, in part:

> "Any person over the age of 12 years who, with or without malice, purposely points or aims any loaded or empty pistol, gun, revolver, or other firearm, at or toward any other person *within range* of the firearm, except in self-defense, shall be fined upon conviction in any sum not less than $10 nor more than $500, or be imprisoned in the county jail not less than 10 days nor more than six months, or both."

(Emphasis added.)

We review the denial of a motion for judgment of acquittal to determine whether, "after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Pedersen*, 242 Or App 305, 311, 255 P3d 556, *rev den*, 351 Or 254 (2011) (internal quotation marks omitted). However, when "the dispute * * * centers on the meaning of the statute defining the offense, the issue is one of statutory construction," which we review for legal error. *State v. Hunt*, 270 Or App 206, 210, 346 P3d 1285 (2015) (internal quotation marks omitted).

In this case, we are called upon to interpret the legislature's intended meaning of pointing a firearm "toward any other person *within range* of the firearm." Defendant argues that, when "taken together, the plain terms [of ORS

---

[6] ORS 136.445 states:

"In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. The court shall grant the motion if the evidence introduced theretofore is such as would not support a verdict against the defendant. The acquittal shall be a bar to another prosecution for the same offense."

[7] Defendant did not challenge the sufficiency of the evidence on federal constitutional grounds during trial. Thus, we decline to address his unpreserved constitutional argument.

166.190] indicate that the firearm must have a discernible range" and that "the crime is not committed if the victim at whom the firearm is pointed is with*out* the range." (Emphasis in original.) He defines "range" as "the horizontal distance to which a shot or other projectile is or may be propelled." We understand defendant's argument to be that, if a firearm is inoperable because a shot cannot be propelled from it, then the firearm has no range, and a person cannot violate ORS 166.190 by pointing the firearm at another.

The state rejects defendant's understanding of ORS 166.190, though it concedes that the rifle was inoperable at the time defendant pointed it at the officers. The state argues that "within range" refers to the usual range for the firearm at issue, regardless of whether it is loaded or operable at the time of the incident. The state contends that defendant's reading of "within range" would make the "loaded or empty" phrase of the statute meaningless surplusage. According to the state, that phrase indicates that "the legislature sought primarily to address the effect that a pointed firearm has on its victim, rather than the danger created by an operable firearm's lethal capacity."

To interpret the meaning of "within range," we review the text and context of the statute and consider its legislative history to the extent that it is useful to our analysis. *State v. Gaines*, 346 Or 160, 171, 172, 206 P3d 1042 (2009). The term "within" is "used as a function word to indicate enclosure or containment * * * (2) : in the limits or compass of : not beyond." *Webster's Third New Int'l Dictionary* 2627 (unabridged ed 2002). The term "range" refers to a "field of operation." *Id.* at 1880. Read together, "within range" plainly means not beyond a field of operation. However, because ORS 166.190 proscribes the pointing of a firearm "toward any other person within range *of the firearm*," we must interpret the phrase in the context of firearms. To that end, we note that a firearm's range refers to the "distance to which [its] shot or other projectile is or may be propelled." *Id.* We conclude that, for the purposes of ORS 166.190, "range" refers to the distance to which the firearm's shot or projectile *may be* propelled, *i.e.* its intended range. We presume that all firearms have an intended range, given that they

are designed for that very purpose.[8] Accordingly, to satisfy the "within range" element of the statute, the state must adduce sufficient evidence to demonstrate that the victim was not beyond the distance to which the firearm's shot or projectile may be propelled. Our interpretation, unlike that proposed by defendant, is consistent with the other parts of the statute that proscribe pointing or aiming any firearm at another person regardless of whether the firearm is "loaded or empty." *See Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole.").[9] Thus, because the court properly interpreted the statutory requirements regarding the "within range" element of the offense, it did not err by denying defendant's motion for judgment of acquittal.[10]

Affirmed.

---

[8] ORS 166.210, which does not apply directly to ORS 166.190 but lies within the same statutory scheme, defines "firearm" as "a weapon, by whatever name known, which is designed to expel a projectile by the action of powder."

[9] The legislative history further supports that interpretation, given that the type of behavior the legislature intended to proscribe is not limited to behavior that harms or scares another person. In interpreting the statute, *former* ORS 163.320 (1965), *renumbered as* ORS 166.190 (1971), the Supreme Court concluded that legislative intent of the statute was "to close a statutory opening through which persons who pointed firearms at others could escape liability for any crime if they could show that the act was intended to be an act of horseplay or mischief not amounting to an actual assault." *See Rose v. Gladden*, 241 Or 202, 205, 405 P2d 543 (1965) (interpreting the legislative intent of ORS 163.320, the prior version of ORS 166.190, which was nearly identical to the current version of the statute).

[10] Having rejected defendant's statutory interpretation, we need not address the sufficiency of the evidence because defendant has not alleged that the evidence was insufficient to go to the jury under the statute as we have interpreted it in this opinion.