Argued and submitted May 2, 2017, Chiloquin High School, Chiloquin; affirmed January 29, 2020

STATE OF OREGON
and City of Portland,
*Plaintiffs-Respondents,*

*v.*

ALEXANDRA CHANEL BARRETT,
aka Alexandra Barrett, aka Alexandra C. Barrett,
*Defendant-Appellant.*

Multnomah County Circuit Court
14CR10631, 14CR14443, 14CR16019,
14CR17841, 14CR20088, 14CR32814, 15CR00103;
A159139 (Control), A159140, A159141,
A159142, A159143, A159144, A159145

460 P3d 93

Defendant appeals from judgments convicting her of unlawful camping on public property and interference with a peace officer, among other things. First, defendant contends that the trial court erred in denying her pretrial motion to dismiss the charges of unlawful camping under Portland City Code (PCC) 14A.50.020, arguing that the law, as applied to her, violates the Eighth Amendment to the United States Constitution. She also argues that the camping law violates her fundamental right to travel under multiple other constitutional provisions. Second, defendant asserts that the court erred in denying her motion for judgment of acquittal because ORS 203.077 and ORS 203.079, which require local governments to enact policies regarding the removal of homeless campsites, preempted the camping law. *Held*: The trial court did not err in denying either motion. Given the absence of a factual record needed to properly present the question, the Court of Appeals refrained from addressing whether enforcement of the camping law could violate the Eighth Amendment on an as-applied basis. Defendant's right-to-travel argument fails as either a facial or as-applied challenge. ORS 203.077 and ORS 203.079 do not preempt the camping law, as they only require cities and counties to develop and implement policies regarding the removal of homeless persons and their belongings, and they do not prescribe or limit the enactment or enforcement of criminal offenses.

Affirmed.

En Banc

Stephen K. Bushong, Judge.

Lindsey Burrows, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet,

Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Denis M. Vannier argued the cause and filed the brief for respondent City of Portland.

Paul L. Smith argued the cause for respondent State of Oregon. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Shauna M. Curphey filed the brief *amicus curiae* for Oregon Justice Resource Center, Portland Chapter of the National Lawyers Guild, Homeless Youth Law Clinic, Common Cup Family Shelter, Operation Nightwatch, Right to Dream Too, Sisters of the Road, First Unitarian Church of Portland, Augustana Lutheran Church, and Albina Ministerial Alliance. Also on the joint brief were Mathew W. Dos Santos and Kelly K. Simon for ACLU of Oregon.

Before Egan, Chief Judge, and Armstrong, Ortega, DeVore, Tookey, DeHoog, James, Aoyagi, Powers, and Mooney, Judges, and Hadlock, Judge pro tempore.

DeVORE, J.

Affirmed.

Ortega, J., concurring.

James, J., concurring.

## DeVORE, J.

Defendant appeals from judgments convicting her of unlawful camping on public property, criminal trespass, and interference with a peace officer (IPO). Defendant first contends that the trial court erred by denying her pretrial motion to dismiss the charges of unlawful camping under Portland City Code (PCC) 14A.50.020.[1] She argues that the camping law, as applied to her in this case, violates the Eighth Amendment to the United States Constitution.[2] Defendant also contends that the camping law violates her constitutional right to travel. In addition, she contends that the court erred during trial by denying her motion for judgment of acquittal (MJOA) because convictions on the charges of unlawful camping and IPO were invalid. Finally, she contends that the city's camping law was preempted by ORS 203.077 and ORS 203.079, which require local governments to enact policies on removal of homeless campsites.[3]

As explained in the opinions of the court, we affirm the judgments of conviction on the several charges. We agree that the trial court did not err in denying defendant's pretrial motion and her MJOA. A majority of this court refrains

---

[1] PCC 14A.50.020 provides:

"A. As used in this Section:

"1. 'To camp' means to set up, or to remain in or at a campsite, for the purpose of establishing or maintaining a temporary place to live.

"2. 'Campsite' means any place where any bedding, sleeping bag, or other sleeping matter, or any stove or fire is placed, established, or maintained, whether or not such place incorporates the use of any tent, lean-to, shack, or any other structure, or any vehicle or part thereof.

"B. It is unlawful for any person to camp in or upon any public property or public right of way, unless otherwise specifically authorized by this Code or by declaration by the Mayor in emergency circumstances.

"C. The violation of this Section is punishable, upon conviction, by a fine of not more than $100 or by imprisonment for a period not to exceed 30 days or both."

[2] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Defendant also cites Article I, section 16, of the Oregon Constitution but presents no developed argument involving state constitutional grounds. Consequently, we approach the question as a matter of federal constitutional law.

[3] Defendant also argues that the trespass and interference charges were invalid because the camping ordinance was unconstitutional under the Eighth Amendment, but she did not preserve that issue on those charges in her MJOA.

from addressing whether enforcement of PCC 14A.50.020 could violate the Eighth Amendment on an as-applied basis in the absence of a factual record needed to properly present that question. By refraining from addressing that question, we do not imply an answer.[4] Defendant's right-to-travel argument fails as either a facial or as-applied challenge. Finally, ORS 203.077 and ORS 203.079 do not preempt the camping law, as they only require cities and counties to develop and implement policies regarding the removal of homeless persons and their belongings, and they do not prescribe or limit the enactment or enforcement of criminal offenses.

## I.  PROCEEDINGS

The procedural facts are undisputed. In May, June, July, August, September, and October 2014, defendant was arrested and charged with a variety of offenses, including unlawful camping, PCC 14A.50.020; IPO, ORS 162.247; resisting arrest, ORS 162.315; second-degree criminal trespass, ORS 164.245; third-degree criminal mischief, ORS 164.345; and offensive littering, ORS 164.805.[5]

In December 2014, defendant filed a "Motion to Dismiss," asserting that convictions under Portland's camping ordinance would be cruel and unusual punishment as applied to her. She argued that camping in a public place was an involuntary act that was an unavoidable consequence of her status of being homeless. For purposes of the motion, the parties agreed to a number of factual statements. They agreed that, at the time of her first arrest on May 24, 2014, defendant was "a member of the homeless community

---

[4] In separately concurring opinions, some judges go further to address the merits of the question. Some conclude that, with proof that camping was involuntary, enforcement of the ordinance would violate the Eighth Amendment. 302 Or App at 45 (Ortega, J., concurring) ("[I]t is my view that the Eighth Amendment does not permit punishing a homeless person for public camping when the camping is an unavoidable consequence of being homeless."). Another judge concludes, regardless of such facts, that the camping ordinance does not violate the Eighth Amendment as a matter of law. 302 Or App at 52-53 (James, J., concurring) (enforcement of the camping ordinance does not punish status in violation of the Eighth Amendment).

[5] Seven cases have been consolidated for appeal. A charge of unlawful possession of methamphetamine, ORS 475.894, was dismissed before trial. Defendant does not appeal from the judgment of conviction for offensive littering, ORS 164.805.

residing in downtown Portland." Defendant's ensuing argument assumed that she remained homeless; the city did not contest that assumption.

Defendant advised the court "that the original motion, captioned as a motion to dismiss, was incorrectly captioned." She wrote, "It should have been labeled a *demurrer* under ORS 135.630(4)." (Emphasis added.) At the hearing on the motion, defendant elaborated:

> "As we know [*sic*] in the motion that this is an as applied challenge. And under [ORS] 135.630, we were really focusing on (4), which is *the facts do not constitute an offense.* However, *demurrer only really applies to a facial challenge just on the face of the complaint itself.* And so we really think that this motion should just be brought as a motion to find the city—the Portland city camping ordinance unconstitutional and just leave it at that."

(Emphases added.) Defendant explained, "On its face, the Portland City Code ordinance does not facially violate the constitution. That's why we just brought this as an 'as applied' challenge."

Treating the matter as an as-applied challenge, the trial court asked defendant if she contended that the ordinance was unconstitutional "no matter what the city did in terms of providing places for homeless people to sleep at night." Defendant replied that the answer depended on the number of beds and the restrictions on using them, such as a person's gender, a person's status with or without children, and a person's illicit drug use. The court responded, "Don't I need to know all those facts before I can decide whether this ordinance is constitutional or not?" Defendant referenced a past survey, which was not among the agreed statements, concerning homelessness and shelter beds in prior years. The court asked:

> "Is that the relevant question? Or does it have to be on the night that [defendant] was—since we're an as applied challenge, on the particular night on the particular date that she was cited, if there's a bed available and she chose not to use it, wouldn't that make a difference?"

Defendant replied, "I don't think it's necessarily whether there's a bed available on that specific night." Defendant

explained that a person might have been turned away repeatedly or felt safer camping on a sidewalk or in a park. The court asked whether it should consider the "bigger picture" and the efforts of the city to address homelessness. Defense counsel responded that one reason to have brought the case as an as-applied challenge was instead to focus on defendant's personal circumstances because counsel's office "didn't necessarily have the resources to go out and conduct this, which I agree with the Court is required and needed."

The trial court denied defendant's motion without deciding whether the anticamping ordinance necessarily violated the Eighth Amendment. The court observed that more facts would be helpful to decide the issue. Nevertheless, assuming without deciding that the Eighth Amendment prevented the city from enforcing its camping ordinance against defendant, the court concluded that the affirmative defense of "necessity" or "choice of evils," when raised at trial, could avoid a constitutional problem.[6]

At trial, defendant asserted an affirmative defense of "choice of evils." *See* ORS 161.200 (providing justification when necessity or choice of evils is provided). Defendant and the city presented conflicting evidence on that defense.[7] Defendant did not raise her as-applied challenge under the Eighth Amendment. The jury returned its verdicts against defendant for unlawful camping and a variety of other charges.

## II.   AS-APPLIED CHALLENGE

On appeal, defendant's first assignments of error assert that the trial court erred in rejecting her pretrial motion against the public camping charges on the ground that Portland's ordinance violates the Eighth Amendment as applied to her. Citing *Robinson v. California*, 370 US 660, 82 S Ct 1417, 8 L Ed 2d 758 (1962), defendant notes that,

---

[6] The trial court followed *In re Eichorn*, 69 Cal App 4th 382, 81 Cal Rptr 2d 535 (1998) (concluding that there was no constitutional violation because a defendant may assert a necessity or "choice of evils" defense).

[7] At trial, defendant presented a witness who referred to a survey in prior years finding the number of homeless persons to exceed the number of shelter beds. The city presented the testimony of police officers that defendant rebuffed their attempts to interest her in engaging in social or housing services.

although the criminal law may penalize a person's conduct, such as possession or use of illicit drugs, it may not criminalize mere status, such as being addicted to drugs. By extension, she argues that her camping on public property was an involuntary act that was an unavoidable consequence of her status of being homeless. In this court, she supports her argument with evidence that was not in the record at the time of the pretrial motion.

The city responds that the trial court did not err, arguing a pretrial demurrer or motion to dismiss is an improper means by which to present defendant's challenge because those pretrial motions do not consider the facts necessary for an as-applied challenge under the Eighth Amendment. Relatedly, the city notes that, at trial, defendant did not renew the Eighth Amendment defense, and, as a result, the issue was not preserved. On the merits, the city argues that the camping ordinance does not violate the Eighth Amendment because it addresses the act of camping in public spaces, not the mere status of being homeless.

After we heard oral argument in this case, the Ninth Circuit Court of Appeals held, in a civil action under 42 USC section 1983, that a Boise ordinance that prohibited camping on public property as applied to homeless plaintiffs violated the Eighth Amendment, because camping could be considered an involuntary act that was an unavoidable consequence of the status of being homeless when the number of homeless persons exceeded the number of shelter beds. *Martin v. City of Boise*, 920 F3d 584, 616 (9th Cir), *cert den*, ___ US ___ (2019).[8] To indicate that its decision was "narrow,"

---

[8] In other circumstances, other courts have expressed other views. *See, e.g.*, *Joel v. City of Orlando*, 232 F3d 1353, 1362 (11th Cir 2000), *cert den*, 532 US 978 (2001) (court rejected complaint of homeless plaintiffs alleging, among other things, a violation of Eighth Amendment, but where shelter has never exceeded its capacity); *Tobe v. City of Santa Ana*, 9 Cal 4th 1069, 1104-05, 892 P2d 1145 (1995) (given failure of evidence, rejecting the plaintiff's Eighth Amendment challenge to a city ordinance that banned public camping and determining that ordinance was facially constitutional). Generally, we may consider *Martin* and other opinions in reaching our own decision, but it is well established that we are not compelled to follow the analysis of the Ninth Circuit or any other federal circuit court. Rather, in understanding the Eighth Amendment, we are bound only by the United States Constitution and the decisions of the United States Supreme Court and Oregon Supreme Court. *State v. Febuary*, 361 Or 544, 548 n 1, 396 P3d 894 (2017); *State v. Moyle*, 299 Or 691, 707, 705 P2d 740 (1985).

the court stated that an as-applied challenge would include consideration of additional facts, including a defendant's specific efforts at finding shelter and, even if shelters were unavailable, consideration of a city's concern for particular locations or obstructions of public ways. *Id.* at 617 n 8.

We begin and end with the recognition that, with her pretrial motion, defendant did not develop a factual record that was sufficient to permit the court to determine whether conviction of defendant under PCC 14A.50.020 would violate the Eighth Amendment as applied to her.[9] That is, assuming, without deciding, that she could present such an as-applied challenge, she fails to provide the facts needed, in the first place, for us to begin to consider the sort of challenge that she presents. Although defendant argued at the hearing about homeless persons, shelter beds, and restrictions on shelter beds, there was no evidence received, stipulated to, or judicially noticed to support that argument. The record was devoid of general information about the availability of shelter and devoid of any personal information about defendant's attempts to be among those sheltered. In short, the record did not indicate whether defendant's acts of camping were involuntary acts.

By referring to the absence of facts needed for an as-applied challenge, we do not imply our acceptance or rejection of defendant's constitutional theory—a theory that is centered on an "involuntary act" as a matter of constitutionally protected status. We need not, and we do not, address the Eighth Amendment—either directly or implicitly. It is simply enough to recognize that the record was inadequate in the trial court to present the as-applied challenge that defendant urged, just as it is now inadequate for this court to consider, address, and resolve that question, in whole or in part, on appeal. We conclude that, lacking the record necessary for this as-applied challenge, the trial court did not err in denying the pretrial motion.

---

[9] We need not address the procedural limitations of a demurrer or pretrial motion to dismiss. *See* ORS 135.630 (demurrer standards); *see also State v. Nistler*, 268 Or App 470, 477-79, 342 P3d 1035, *rev den*, 357 Or 551 (2015) (demurrer standards); *State v. Cervantes*, 232 Or App 567, 576, 223 P3d 425 (2009) (same); *State v. Weber*, 172 Or App 704, 713-14, 19 P3d 378 (2001) (demurrer and alternative motion to dismiss).

Our task as an appellate court is to determine whether the trial court erred in denying defendant's pretrial motion. We recognize that defendant asked the trial court to "find * * * the Portland city camping ordinance unconstitutional and just leave it at that." But, this is a criminal case, not a declaratory judgment action. Accordingly, we do not decide whether the Portland ordinance would or would not violate the Eighth Amendment based on hypothetical facts. In similar cases, we have declined to address constitutional questions where the record was "too inconclusive to justify the adoption of the constitutional rule urged by defendant." *City of Portland v. Juntunen*, 6 Or App 632, 635, 488 P2d 806 (1971) (declining to conclude that punishing an alcoholic for his appearance in public while drunk constitutes cruel and unusual punishment absent evidence that the defendant was unable to avoid appearing in public while drunk). We have cautioned that the development of judge-made constitutional law should proceed incrementally despite recognition "that the bench and Bar might be well served by a decision resolving [a] central constitutional issue." *State v. Herrera-Lopez*, 204 Or App 188, 193, 129 P3d 238, *rev den*, 341 Or 140 (2006) (declining to determine whether Sixth Amendment rules announced in "*Apprendi* and *Blakely* apply to imposition of consecutive sentences" because "any decision" on that point "would be *dictum* and would not have any effect" on defendant, who would lose on appeal in any event). And, in a different context, the Oregon Supreme Court recently reminded us that, "[a]s a general matter, [the] court will 'avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Vasquez v. Double Press Mfg., Inc.*, 364 Or 609, 614, 437 P3d 1107 (2019) (quoting *State v. Barrett*, 350 Or 390, 397-98, 255 P3d 472 (2011)) (preferring decision on a statutory basis). We adhere to those principles here.

## III.   RIGHT TO TRAVEL

In her pretrial motion, defendant also argued that the camping law imposed an unconstitutional restriction on her fundamental right to travel. *See City of Chicago v. Morales*, 527 US 41, 53, 119 S Ct 1849, 144 L Ed 2d 67 (1999) (recognizing "the freedom to loiter for innocent purposes"); *see also State v. Berringer*, 234 Or App 665, 671-75, 229

P3d 615, *rev den*, 348 Or 669 (2010) (discussing the right to interstate travel). In her view, a "homeless person residing or passing through Portland has no choice but to sleep outside" and, by criminalizing public camping, the ordinance "wholly prevents homeless persons from residing in or visiting Portland."

If intended to be a facial challenge, defendant's argument has not persuaded us that Portland's camping law, which addresses all persons alike, violates the right to travel of those who are unsheltered. *See Berringer*, 234 Or App at 671-75 (rejecting argument that enforcement of Oregon's law against possession of marijuana, addressing all persons alike, violated the right to travel). If intended to be an as-applied challenge, the argument fails for lack of a factual record for the reasons discussed.

## IV.  PREEMPTION

At trial, defendant twice moved for a judgment of acquittal on the charges of unlawful camping and IPO.[10] Defendant argued that state law, ORS 203.077 and ORS 203.079, preempted the city's camping restriction. In her view, because the camping restriction was preempted, the police officer's order not to camp on public property was not lawful, and a required element of the offense of IPO is refusal "to obey a lawful order by the peace officer." ORS 162.247(1)(b). The first of the two provisions, ORS 203.077, states that all

"municipalities and counties shall:

  "(1)  Develop a policy that recognizes the social nature of the problem of homeless individuals camping on public property.

---

[10] In her MJOA, defendant did not make preemption or posted notice under ORS 203.077 and ORS 203.079 a basis to dismiss the charges of criminal trespass. Although she includes preemption and posted notice in her arguments about trespass charges on appeal, that issue was not preserved in the trial court. To the extent that she challenges the evidentiary basis of the charges of criminal trespass, we reject the arguments without discussion.

Defendant also argues about preemption and posted notice in her challenge on appeal to denial of the pretrial motion on the camping charges, but she failed to preserve those arguments by making them with her pretrial motion. Accordingly, the arguments about preemption and posted notice on appeal relate only to denial of her motion for judgment of acquittal on unlawful camping and IPO.

> "(2)   Implement the policy as developed, to ensure the most humane treatment for removal of homeless individuals from camping sites on public property."

The second of the provisions, ORS 203.079 describes "what those policies must include":

> "(1)   A policy developed pursuant to ORS 203.077 shall include, but is not limited to, the following:
>
> "(a)   Prior to removing homeless individuals from an established camping site, law enforcement officials shall post a notice, written in English and Spanish, 24 hours in advance.
>
> "* * * * *
>
> "(3)   A person authorized to issue a citation for unlawful camping under state law, administrative rule or city or county ordinance may not issue the citation if the citation would be issued within 200 feet of the notice described in this section and within two hours before or after the notice was posted."

Defendant argued that the state had failed to present evidence that officers had posted a notice before ordering defendant to leave the park and had notified social services of the need to arrange housing and other assistance.

The trial court denied the motion. The court noted that ORS 203.077 and ORS 203.079 were not part of the state's criminal code and did not present an obvious conflict with local ordinances. The court also noted that ORS 203.077 and ORS 203.079 do not provide a remedy for a city's failure to comply with those policy statutes; more particularly, the statutes do not provide that they "invalidate any criminal charges that follow from violations of the city ordinance that are observed by the—by local law enforcement." Defendant had not offered the court legislative history that would suggest legislative intention to preempt local ordinances. Therefore, the court was not persuaded that the legislature intended ORS 203.077 and ORS 203.079 to preempt the criminal ordinances on camping, such as PCC 14A.50.020.

On appeal, defendant relies on ORS 203.079(1) and (3) to assert that state law permits a person to camp on public property until the city posts a notice. She argues that

the statute conflicts with PCC 14A.50.020, which proscribes public camping without requiring such notice as an element of the offense. Defendant concludes that, because the state and local enactments conflict, the statute preempts PCC 14A.50.020. We disagree.

Under a municipality's home rule authority, a "local law is valid and not preempted if it is authorized by the local charter or by a statute, and if it does not contravene state or federal law."[11] *Qwest Corp. v. City of Portland*, 275 Or App 874, 882, 365 P3d 1157 (2015), *rev den*, 360 Or 465 (2016) (quoting *Rogue Valley Sewer Services v. City of Phoenix*, 357 Or 437, 450, 353 P3d 581 (2015)) (internal quotation marks and brackets omitted). A state law can preempt a municipal law in two ways. First, "the state might pass a law or laws expressly precluding all municipal regulation in an area, such that the state 'occup[ies] the field' in that area." *Id*. at 883 (quoting *Rogue Valley Sewer Services*, 357 Or at 454). "A state statute will displace the local rule where the text, context, and legislative history of the statute '*unambiguously* expresses an intention to preclude local governments from regulating' in the same area as that governed by the statute." *Rogue Valley Sewer Services*, 357 Or at 450-51 (quoting *Gunderson, LLC v. City of Portland*, 352 Or 648, 663, 290 P3d 803 (2012) (emphasis in *Rogue Valley Sewer Services*)). Second, "state law will preempt a municipal law if the laws conflict, such that they 'cannot operate concurrently.'" *Qwest Corp.*, 275 Or App at 883 (quoting *LaGrande/Astoria v. PERB*, 281 Or 137, 148, 576 P2d 1204, *adh'd to on recons*, 284 Or 173, 586 P2d 765 (1978)). When "conducting that conflict analysis, we must construe the local law 'if possible, to be intended to function consistently with state laws.'" *Id*. (quoting *LaGrande/Astoria*, 281 Or at 148).

In this case, ORS 203.077 instructs cities and counties to develop and implement policies to "ensure the most humane treatment for removal of homeless individuals from camping sites on public property." To that end, ORS 203.079(1) provides that a policy should include requirements

---

[11]  Home rule authority derives from Article XI, section 2, and Article IV, section 1(5), of the Oregon Constitution.

for law enforcement when removing individuals and their belongings from campsites, including posting a notice before removing persons or property. In addition, ORS 203.079(3) provides that a policy should require that a citation for unlawful camping may not be issued "within 200 feet" of the posted notice *and* "within two hours before or after the notice was posted." In order to determine that those statutes preempt a local ordinance, it would be necessary to find that the legislature intended that compliance with those policy provisions was an element of proof of a camping offense in the criminal enforcement of a local camping ordinance.

Defendant does not assert that the text and context unambiguously express a legislative intention to preempt the field so as to preclude local governments from providing criminal sanctions for public camping. Therefore, the question becomes whether PCC 14A.50.020 conflicts with the notice provisions set out in ORS 203.079(1) or (3). In considering that question, we interpret the statute and the ordinance to determine "if they can function concurrently or if they necessarily conflict." *Qwest Corp.*, 275 Or App at 883. "It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law *unless that intention is apparent.*" *LaGrande/Astoria*, 281 Or at 148-49 (emphasis added; footnote omitted).

An intention to displace local regulation is not apparent from the text of ORS 203.077 or ORS 203.079. The purpose of those two statutes is to require a city or county to develop and implement a "policy" as to the "removal" of homeless persons and the belongings that make a camping site. Examined more closely, the statutes concern development of a "policy," which would be understood to mean "a definite course or method of action selected (as by a government ***)" or "a projected program consisting of desired objectives and the means to achieve them." *Webster's Third New Int'l Dictionary* 1754 (unabridged ed 2002). That policy would concern the "removal" of persons and the belongings that comprise the camp site. ORS

203.079(1)(d).[12] Because ORS 203.077 and ORS 203.079 speak in terms of "policies," the statutes do not prescribe or limit criminal offenses themselves. The policy statutes do not address what elements must comprise unlawful camping, nor do the statutes address the effect of a city's violation of a policy once adopted.

Given that, if possible, we construe the ordinance and statutes in a manner that permits each to operate without conflicting with the other, *LaGrande/Astoria*, 281 Or at 148, we conclude that a city can issue public camping citations independently of a policy enacted under ORS 203.079. As a result, a city could be noncompliant with such a policy and might be subject to a remedy for compliance.[13] But noncompliance would not mean that ORS 203.077 and ORS 203.079 conflict with a local ordinance in prescribing the terms of the offense of unlawful camping. Those statutes do not preempt so as to foreclose prosecution of a camping offense under PCC 14A.50.020. The prosecution need not prove that the city complied with a policy developed in accordance with ORS 203.079 in order to prosecute a citation for unlawful camping.

## V.   CONCLUSION

For all of those reasons, we conclude that the trial court did not err in denying defendant's pretrial motion or her motion for judgment of acquittal.

Affirmed.

**ORTEGA, J.,** concurring.

The trial court reached defendant's Eighth Amendment challenge to the city's public camping ordinance, concluding that "applying [it] to defendant does not violate the

---

[12] In part, ORS 203.079(1)(d) provides:

"All unclaimed personal property shall be given to law enforcement officials whether 24-hour notice is required or not. The property shall be stored for a minimum of 30 days during which it will be reasonably available to any individual claiming ownership."

[13] For example, the trial court suggested that "there's a lot of different ways to enforce that mandate from the state legislature, including they can cut off any sort of state funding if the city of Portland is not in compliance with the statute or the city's policy is not in compliance with the statute."

prohibitions on cruel and unusual punishment in the Eighth Amendment." The court was unpersuaded that *Robinson v. California*, 370 US 660, 82 S Ct 417, 8 L Ed 2d 758 (1962), and *Powell v. Texas*, 392 US 514, 88 S Ct 2145, 20 L Ed 2d 1254 (1968), applied and concluded that the "choice-of-evils" defense was the appropriate means for defendant to challenge the public camping charges against her. Nevertheless, a majority of this court declines to address whether those conclusions by the trial court were correct, on the basis that doing so would require the assumption of hypothetical facts.

Although I agree with the majority that the trial court did not err in denying defendant's pretrial motion—I reject defendant's contention that the fact that she is homeless is alone sufficient to decide her Eighth Amendment challenge—and thus agree that we must affirm defendant's convictions, I write separately because the importance of the issue deserves a fuller engagement with the merits. As I see it, it is not hypothetical that the homeless in Portland are subject to criminal punishment for a circumstance that is, in many cases, beyond their control, and those in circumstances similar to those faced by defendant would benefit from guidance by this court. Having examined *Robinson*, *Powell*, and the two well-developed contemporary decisions from federal appellate courts on this issue, I disagree with the trial court's bases for rejecting defendant's Eighth Amendment argument. The city's blanket prohibition of public camping violates the Eighth Amendment when the camping is an unavoidable consequence of being homeless.

To explain why, I begin with the relevant constitutional law. A state has the authority to punish individuals for criminal conduct, but the "constitutional prohibition against excessive or cruel and unusual punishments mandates that the State's power to punish be exercised within the limits of civilized standards." *Kennedy v. Louisiana*, 554 US 407, 436, 128 S Ct 2641, 171 L Ed 2d 525, *modified on denial of reh'g*, 554 US 945, 129 S Ct 1 (Mem), 171 L Ed 2d 932 (2008) (internal quotation marks omitted). In addition to the Eighth Amendment limitation on the *kind* of punishment that may be imposed, and its mandate that punishment may not be *grossly disproportionate* to the severity of the crime, the Eighth Amendment "imposes substantive

limits on *what* can be made criminal and punished as such." *Ingraham v. Wright*, 430 US 651, 667, 97 S Ct 1401, 51 L Ed 2d 711 (1977) (emphasis added). That last limitation, the Court has said, is "one to be applied sparingly." *Id*.

*Robinson* provides the foundation for defendant's argument that the city's public camping prohibition fell within that third limitation articulated by the Court in *Ingraham*. The *Robinson* court invalidated, under the Eighth Amendment, a California law making it a criminal offense to "be addicted to the use of narcotics." 370 US 660. The Court reasoned that the California law was "not one which punishe[d] a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration." *Id*. at 666. That is, it did not punish any conduct but the mere fact of being addicted to narcotics, *i.e.*, it made "the 'status' of narcotic addiction a criminal offense." *Id*. Further, the Court recognized that, because narcotics addiction is an illness or disease and, as such, can be "contracted innocently or involuntarily," "a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment." *Id*. at 667.

In *Powell*, six years later and in a 4-1-4 divided decision, the Court revisited *Robinson* when it assessed an Eighth Amendment challenge to a Texas law that imposed a $100 fine for being "found in a state of intoxication in any public place." 392 US at 517. The trial court found that the defendant was an alcoholic who had no control over his drinking or appearing in public while drunk, but rejected the defendant's argument that, under the Eighth Amendment, he could not be punished for involuntarily appearing in public while drunk. *Id*. The plurality opinion, which affirmed the defendant's conviction, interpreted *Robinson* as precluding only the criminalization of "status" and not the criminalization of conduct associated with status. *Id*. at 533. It reasoned that the

"entire thrust of *Robinson*'s interpretation of the Cruel and Unusual Punishment Clause is that criminal penalties

may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some *actus reus*. It thus does not deal with the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, 'involuntary' *** ."

*Id*. Thus, because, "[o]n its face the present case does not fall within that holding, since appellant was convicted, not for being a chronic alcoholic, but for being in public while drunk on a particular occasion," the plurality opinion upheld the public intoxication law. *Id*. at 532.

The four-Justice dissent concluded that *Robinson* was broader in its reach: "Criminal penalties may not be inflicted upon a person for being in a condition he is powerless to change." *Id*. at 567 (Fortas, J., dissenting). The dissent acknowledged that, unlike the statute in *Robinson*, the public intoxication statute covers more than just status. *Id*. The dissent reasoned, however, that "the essential constitutional defect here is the same as in *Robinson*, for in both cases the particular defendant was accused of being in a condition which he had no capacity to change or avoid." *Id*. at 568. That is, the state cannot punish a person for actions that are intertwined with "the syndrome or disease of alcoholism." *Id*. at 559 n 2 (distinguishing public intoxication from crimes such as driving while intoxicated, which "require independent acts or conduct [that] do not typically flow from and are not part of the syndrome of the disease of chronic alcoholism").

In a concurring opinion, Justice White considered the voluntariness or volitional nature of the conduct in question. *Id*. at 548-51 (White, J., concurring in the judgment). He reasoned that, if sufficient evidence is presented to show that the conduct at issue was involuntary due to one's condition, the Eighth Amendment prohibits criminalization of that conduct. However, he concurred with the plurality's affirmance of the conviction because, although the record supported a finding that the defendant involuntarily drank, nothing in the record suggested that the defendant—who had a home and a wife—was compelled to be drunk *in public*. *Id*. at 553. The defendant's circumstances, Justice White

noted, were different from those of many chronic alcoholics who are also homeless:

> "For all practical purposes the public streets may be home for these unfortunates, not because their disease compels them to be there, but because, drunk or sober, they have no place else to go and no place else to be when they are drinking. This is more a function of economic station than of disease, although the disease may lead to destitution and perpetuate that condition. For some of these alcoholics I would think a showing could be made that resisting drunkenness is impossible and that avoiding public places when intoxicated is also impossible."

*Id*. at 551.

The Ninth Circuit was persuaded by Justice White's approach in *Powell* when it addressed a 42 USC section 1983 challenge by homeless individuals who had been cited or arrested for violating a City of Los Angeles ordinance that made it illegal to sit, lie, or sleep on the city's sidewalks and streets at all times. *Jones v. City of Los Angeles*, 444 F3d 1118 (9th Cir 2006), *vac'd*, 505 F3d 1006 (2007). There, in reviewing the district court's grant of summary judgment to the city on grounds that the ordinance in question penalized conduct, not status, the Ninth Circuit considered the undisputed factual record that indicated, among other things, the pervasive homelessness problem in Skid Row (where the city's homeless population was concentrated), and that for "the approximately 11,000 - 12,000 homeless individuals in Skid Row, space is available in [single-room occupancy] hotels, shelters, and other temporary or transitional housing for only 9000 or 10,000, leaving more than 1000 people unable to find shelter each night." *Id*. at 1122.

Persuaded by the reasoning supplied by the Court in *Robinson*, and by the dissent and Justice White's concurrence in *Powell*, the Ninth Circuit held that "the involuntariness of the act or condition the City criminalizes is the critical factor delineating a constitutionally cognizable status, and incidental conduct which is integral to and an unavoidable result of that status, from acts or conditions that can be criminalized consistent with the Eighth Amendment." *Id*. at 1132. That is, the court explained that "five Justices in *Powell* understood *Robinson* to stand for

the proposition that the Eighth Amendment prohibits the state from punishing an involuntary act or condition if it is the unavoidable consequence of one's status or being." *Id*. at 1135. Accordingly, because the plaintiffs "made a substantial showing that they were unable to stay off the streets on the night[s] in question," the enforcement of the city's ordinance "at all times and in all places against homeless individuals who are sitting, lying, or sleeping in Los Angeles's Skid Row because they cannot obtain shelter violates the Cruel and Unusual Punishment Clause." *Id*. at 1136.

Although the *Jones* decision was vacated when the parties settled, the Ninth Circuit returned to the same conclusions in *Martin v. City of Boise*, 920 F3d 584 (2019), *cert den sub nom Boise, ID v. Martin*, 19-247, 2019 WL 6833408 (US Dec 16, 2019). In *Martin*, the plaintiffs were homeless residents of the City of Boise who had been cited by the police for violating the city's ordinance that made it a misdemeanor offense to camp in public at all times. 920 F3d at 603-04. The Ninth Circuit, reaffirming its holding in *Jones*, held that "an ordinance violates the Eighth Amendment insofar as it imposes criminal sanctions against homeless individuals for sleeping outdoors, on public property, when no alternative shelter is available to them." *Id*. at 604.[1]

It is important to emphasize that the *Martin* court's holding is limited; it applies "only that 'so long as there is a

---

[1] The Fourth Circuit recently came to a similar view of the Eighth Amendment, *Robinson*, and *Powell*. *Manning v. Caldwell for City of Roanoke*, 930 F3d 264 (4th Cir 2019). In *Manning*, the en banc court considered a Virginia law that prohibited the possession, purchase, or consumption of alcohol by a person who is subject to a civil order—an interdiction—when the person has been convicted of driving while intoxicated or designated as a "habitual drunkard." *Id*. at 268-70. Among other constitutional challenges in that case, homeless persons who were alcoholics and had been prosecuted for violating their interdiction orders argued that the interdiction law criminalized their status as homeless alcoholics and was thus, under the Eighth Amendment, cruel and unusual punishment. *Id*. The court reversed the district court's dismissal of the suit for failure to state a claim, concluding that, under the Eighth Amendment, the habitual drunkard statute punished "conduct that is an *involuntary manifestation* of an illness." *Id*. at 284 (emphasis in original). Notable is the court's view of federal circuit opinions on the issue. Responding to the principal dissent's suggestion that the majority's conclusion "'runs headlong into a large chorus of circuit court opinions' holding to the contrary," the court pointed to the Ninth Circuit's *Martin* decision and characterized the two opinions from the Eleventh Circuit as "cursory and unpersuasive." *Manning*, 930 F3d at 282 n 17 (quoting *id*. at 289 (Wilkinson, J., dissenting)).

greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters],' the jurisdiction cannot prosecute homeless individuals for 'involuntarily sitting, lying, and sleeping in public.'" *Id*. at 617 (quoting *Jones*, 444 F3d at 1138). Put differently, under *Martin*, the Eighth Amendment prohibits a local government from enforcing a public camping ordinance that is unrestricted to particular places or times against a homeless person who does not have access to adequate temporary shelter. The *Martin* holding "'in no way dictate[s]'" to a local government "'that it must provide sufficient shelter for the homeless, or allow anyone who wishes to sit, lie, or sleep on the streets *** at any time and at any place.'" *Id*. (quoting *Jones*, 444 F3d at 1138). Nor does the holding "cover individuals who do have access to adequate temporary shelter, whether they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it." *Id*. at 617 n 8.

With that said, Justice White's concurrence in *Powell* comes the closest to providing a guiding United States Supreme Court opinion for resolving the constitutionality of a public camping ordinance enforced against the homeless. To begin with, Justice White and the plurality did not achieve consensus in *Powell* on the reach of *Robinson* and the Eighth Amendment. When "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgmen[t] on the narrowest grounds." *Marks v. United States*, 430 US 188, 193, 97 S Ct 990, 51 L Ed 2d 260 (1977) (internal quotation mark omitted). Consequently, under the *Marks* rule, the precedential effect of the *Powell* plurality opinion is constrained by its particular facts, and neither the plurality opinion nor Justice Black's concurrence compels the view advanced by Judge James's opinion in this case. 302 Or App at 49-53 (James, J., concurring). Although I do not necessarily agree with the Fourth Circuit's conclusion that Justice White's concurrence "offers the narrowest basis for the Court's fractured decision, and so is controlling under the *Marks* rule," *Manning v. Caldwell*, 930 F3d 264, 281 (2019), I find

that Justice White's concurrence, when combined with the reasoning of the four justices in the *Powell* dissent, is the appropriate basis to approach the Eighth Amendment issue presented to us by defendant. That is, with those two opinions, five justices agreed that a law that criminalizes an act that is an unavoidable byproduct of a person's status—as opposed to one that criminalizes status itself—still runs afoul of the Eighth Amendment's stricture against cruel and unusual punishment.

Turning to the issue at hand, I start by concluding that homelessness is a status for the purpose of deciding the Eighth Amendment challenge here. Under *Robinson*, it is cruel and unusual under the Eighth Amendment to punish the status of narcotic addiction. 370 US at 666 (characterizing the law in question as a "statute which makes the 'status' of narcotic addiction a criminal offense"). Likewise, the Court in *Powell* recognized that a law that sought to punish the status of alcohol addiction would similarly violate the Eighth Amendment. 392 US at 532 ("On its face the present case does not fall within [*Robinson*'s] holding, since appellant was convicted not for being a chronic alcoholic, but for being in public while drunk on a particular occasion."). I would extend those holdings to criminalizing the status of being homeless. As the *Jones* court put it:

> "Homelessness is not an innate or immutable characteristic, nor is it a disease, such as drug addiction or alcoholism. But generally one cannot become a drug addict or alcoholic, as those terms are commonly used, without engaging in at least some voluntary acts (taking drugs, drinking alcohol). Similarly, an individual may become homeless based on factors both within and beyond his immediate control, especially in consideration of the composition of the homeless as a group: the mentally ill, addicts, victims of domestic violence, the unemployed, and the unemployable."

444 F3d at 1137. In addition to the involuntary and voluntary causes of homelessness, it is unlikely that a person chooses to remain homeless. That is, the causes of homelessness—mental illness, addiction, economic conditions—similarly remain to pose substantial, if not in some cases, insurmountable, obstacles to obtaining a "decent, safe, stable and permanent place to live that is fit for human

habitation" while a person is in the throes of homelessness. ORS 458.528 (so defining homelessness).

Further, the act at issue here—sleeping or resting—is fundamental to the human condition, as it involves a human act or condition that is life sustaining and biologically unavoidable. *See Martin*, 920 F3d at 617-18 (explaining that the conduct at issue is a "'universal and unavoidable consequence[] of being human'" (quoting *Jones*, 444 F3d at 1136)). Sleeping or resting is inescapable, and, if the only means to satisfy that human necessity is by violating the city's public camping ordinance, any distinction drawn between status and conduct violating the ordinance is illusory. *See Jones*, 444 F3d at 1136 (reasoning that any "conduct at issue here is involuntary and inseparable from status—they are one and the same, given that human beings are biologically compelled to rest, whether by sitting, lying, or sleeping").

Consequently, if a person is homeless, and the city does not have temporary shelter available, then complying with PCC 14A.50.020 is impossible. PCC 14A.50.020 prohibits setting up or remaining in or at a campsite as a temporary place to live on all of the city's public property at all times of day. Camping on private property without permission is not an option. Homeless persons do not, or should not, have to leave the city to comply with PCC 14A.50.020. *See* Harry Simon, *Towns without Pity: A Constitutional and Historical Analysis of Official Efforts to Drive Homeless Persons from American Cities*, 66 Tul L Rev 631, 634-35 (1992) (citing *Papachristou v. City of Jacksonville*, 405 US 156, 92 S Ct 839, 31 L Ed 2d 110 (1972), and *Kolender v. Lawson*, 461 US 352, 103 S Ct 1855, 75 L Ed 2d 903 (1983), for the proposition that those decisions invalidating vagrancy and loitering laws as impermissibly vague in violation of the Due Process Clause of the Fourteenth Amendment effectively caused local governments to shift from using those laws as a way to drive homeless persons from cities to enacting laws like sleeping or camping in public); *Dunn v. Blumstein*, 405 US 330, 338, 92 S Ct 995, 31 L Ed 2d 274 (1972) (recognizing that "freedom to travel through the United States has long been recognized as a basic right under the Constitution"). Hence, it is my view that the Eighth Amendment does not

permit punishing a homeless a person for public camping when the camping is an unavoidable consequence of being homeless.

I do not come to that conclusion lightly, as I recognize that the category of limitations under the Eighth Amendment implicated here, namely, "what can be made criminal and punished as such," is to "be applied sparingly." *Ingraham*, 430 US at 667. However, when the derivative conduct is a human necessity, punishing a homeless person for violating PCC 14A.50.020 is one of those rare circumstances in which what can be punished runs afoul of the Eighth Amendment. The core premise of the Eighth Amendment is that "punishment be exercised within the limits of civilized standards." *Kennedy*, 554 US at 436. Because it is impossible for a homeless person to comply with PCC 14A.50.020 when no temporary shelter is available, that conduct is missing the moral culpability required to justify criminal punishment, and, thus, criminalizing public camping when it is an unavoidable consequence of homelessness does not fit within those standards, particularly when it affects the most vulnerable among us—the mentally ill, the drug addicted, marginalized communities, casualties of economic crises, and victims of domestic violence.

It is worth mentioning that the Ninth Circuit's *Martin* holding is the law of the land in Oregon. Local governments and their officials are examining the viability of ordinances prohibiting camping on public property given the exposure to lawsuits and the threat of litigation. Because local governments are already contending with the legality of enforcing public camping ordinances against the homeless if temporary shelter is unavailable, or the ordinance to be enforced covers all public property at all times of day, any conclusions or comments on this court's part as to the constitutionality of the city's public camping ordinance is not as impactful as it would be otherwise. Further, given that backdrop of civil liability for the enforcement of public camping ordinances,[2] it is, in my view, appropriate for litigants, trial courts, and appellate courts to explore a procedural

---

[2] Because the United States Supreme Court denied *certiorari* in *Martin*, it is likely that that will be the case in Oregon for the foreseeable future.

pathway for resolving the Eighth Amendment challenge raised here in criminal proceedings.

I am also skeptical that the availability of a choice-of-evils defense, under ORS 161.200, cures the constitutional defect of criminalizing public camping when the camping is an unavoidable consequence of being homeless. This court has explained that entitlement to an instruction on the defense requires a showing of "evidence that *** criminal conduct was necessary as an emergency measure to avoid imminent injury" and, when "the defense is properly raised, the trier of fact may balance the desirability of avoiding the injury against the desirability of avoiding what the law seeks to prevent by making that conduct criminal." *State v. Neubauer*, 68 Or App 885, 888, 683 P2d 136 (1984). In this instance, PCC 14A.50.020 is violated when a person sets up a campsite on public property, and a defendant would have to offer evidence that the proscribed conduct was required as an *emergency* measure to avoid an *imminent* injury. Although public camping is inescapable when there are no other options, public camping in that circumstance is not necessarily an *emergency* measure to avoid *imminent* injury. That is, the risk of injury from not going to sleep with one's belongings essential for that act, depending on the circumstances, may be uncertain or speculative, or the risk of injury may be one that accrues over time. *See State v. Freih*, 270 Or App 555, 557, 348 P3d 324 (2015) ("To show that the injury that the defendant sought to avoid was 'imminent' within the meaning of the statute, defendant was required to show that the threat of injury existed *at the time* that defendant committed his offense." (Emphasis in original.)).

I emphasize that, like the Ninth Circuit's holding, my conclusion regarding PCC 14A.50.020 is limited. The city's public camping ordinance applies to all public property within the city at all times of day, and, as defendant acknowledges, the city can enact an ordinance proscribing camping in public at certain times (for example, by requiring persons to remove campsites by a certain time in the morning) or in certain areas (like Chapman Park, where defendant was cited) or excluding campsites placed in public walkways without violating the Eighth Amendment. Moreover, the Eighth Amendment does not prohibit a local

government from enacting ordinances regarding a campsite's sanitary conditions. Further, there may be circumstances when shelter beds are available, but a homeless person charged with public camping has nevertheless decided that he or she simply does not like the available shelter or shelters and chooses to camp on public property.[3] It also needs to be said that the limited conclusion I make here is *not* an attempt to address the homeless crisis. My conclusions here are confined to the constitutionality of the city's public camping law when it is applied to the homeless and cannot be obeyed.

Powers, J., joins in this concurrence.

**JAMES, J.,** concurring.

Every member of this court agrees that the trial court judgment in this case should be affirmed. We differ, however, in the rationale for that affirmance. Unfortunately, I must add to this fracture. The majority and the concurrence by Judge Ortega each forge separate pathways to affirmance. Regrettably, I cannot join either, but for different reasons, as I will explain.

Judge Ortega, drawing upon the rationale articulated by the Ninth Circuit in *Martin v. City of Boise*, 902 F3d 1031, 1035 (9th Cir 2018), *opinion amended and superseded on denial of reh'g*, 920 F3d 584 (9th Cir 2019), concludes that "it is my view that the Eighth Amendment does not permit punishing a homeless person for public camping when the camping is an unavoidable consequence of being homeless."

---

[3] The court in *Martin* noted that its

"holding does not cover individuals who do have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it. Nor do we suggest that a jurisdiction with insufficient shelter can never criminalize the act of sleeping outside. Even where shelter is unavailable, an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible. *See Jones*, 444 F3d at 1123. So, too, might an ordinance barring the obstruction of public rights of way or the erection of certain structures. Whether some other ordinance is consistent with the Eighth Amendment will depend, as here, on whether it punishes a person for lacking the means to live out the 'universal and unavoidable consequences of being human' in the way the ordinance prescribes. *Id*. at 1136."

920 F3d at 617 n 8.

302 Or App at 44-45 (Ortega, J., concurring). However, she reasons, in this case the factual record is insufficient under *Martin* to hold that the enforcement of the Portland City Code (PCC) ordinance at issue against defendant constituted an Eighth Amendment violation. As I will discuss, I am unpersuaded by *Martin* and would not adopt its reasoning, and accordingly, I do not join in that construction of the Eighth Amendment.

The majority does not reach the merits of the Eighth Amendment challenge, instead affirming based on judicial discretion. The majority accepts the parties' characterization of this case as presenting an "as-applied" constitutional challenge, and subsequently concludes that the factual record is insufficient to reach the merits of the as-applied challenge:

> "We begin and end with the recognition that, with her pretrial motion, defendant did not develop a factual record that was sufficient to permit the court to determine whether conviction of defendant under PCC 14A.050.020 would violate the Eighth Amendment as applied to her."

302 Or App at 30.

I agree that the lack of a developed factual record should prudentially preclude a court from reaching the merits of an as-applied constitutional challenge. Unfortunately, and for reasons I will discuss, we cannot treat this case as an as-applied challenge. This case is a classic example of the grey area that exists between facial and as-applied challenges, having characteristics of both. In such instances, the United States Supreme Court has held that, when faced with a federal constitutional challenge, a court must look to the nature of the relief, and if the holding sought would extend beyond the individual litigant, then a court must treat the issue under the standards for a facial challenge. I conclude that is the case here. Accordingly, I do not join the majority opinion, which holds that deficiencies in the factual record preclude us reaching the merits. As a facial challenge, any deficiency in the factual record is not an impediment to the analysis we must conduct, which simply involves comparing the statute against the Eighth Amendment. Therefore, I would affirm on the merits.

## THE EIGHTH AMENDMENT

To help explain why I do not join with Judge Ortega, I must briefly discuss my understanding of what limits the Eighth Amendment places on states. In our federalist system, it is the state that is the primary sovereign, possessed of plenary power, as opposed to the limited enumerated power of the federal government. This plenary power is most commonly described as the "police power."

> "The Constitution may restrict state governments—as it does, for example, by forbidding them to deny any person the equal protection of the laws. But where such prohibitions do not apply, state governments do not need constitutional authorization to act. The States thus can and do perform many of the vital functions of modern government—punishing street crime, running public schools, and zoning property for development, to name but a few—even though the Constitution's text does not authorize any government to do so. Our cases refer to this general power of governing, possessed by the States but not by the Federal Government, as the 'police power.'"

*National Federation of Independent Business v. Sebelius*, 567 US 519, 535-36, 132 S Ct 2566, 183 L Ed 2d 450 (2012) (internal citation omitted). The states traditionally have had great latitude under their police powers to legislate as "'to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" *Metropolitan Life Ins. Co. v. Massachusetts*, 471 US 724, 756, 105 S Ct 2380, 85 L Ed 2d 728 (1985) (quoting *Slaughter-House Cases*, 83 US (16 Wall) 36, 62, 21 L Ed 394 (1872), in turn quoting *Thorpe v. Rutland & Burlington R. Co.*, 27 Vt 140, 149 (1855)).

The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The amendment uses past participles—fines *imposed* and punishments *inflicted*. Accordingly, the amendment limits the *effect* of a state's use of its police power after it has been used and is not generally interpreted to impose a prohibition on the use of that police power in the first instance. The "primary purpose" of the Eighth Amendment's Cruel and Unusual Punishment Clause "has always been considered, and properly so, to be directed at the method

or kind of punishment imposed for the violation of criminal statutes." *Powell v. Texas*, 392 US 514, 531-32, 88 S Ct 2145, 20 L Ed 2d 1254 (1968). Accordingly, the overwhelming number of cases construing the limits imposed on the state by the Eighth and Fourteenth Amendments concern the penalty imposed, assessing whether it was cruel and unusual or disproportionate. There is one very narrow exception.

The United States Supreme Court has recognized that the Eighth Amendment "imposes substantive limits on what can be made criminal and punished as such," however, those limits are "to be applied sparingly." *Ingraham v. Wright*, 430 US 651, 667, 97 S Ct 1401, 51 L Ed 2d 711 (1977) (internal citation omitted). So sparingly, in fact, that only one case has ever found the Eighth Amendment to prohibit a state from using its plenary powers to regulate its citizens, and, in that lone instance, the regulation was not of conduct, but one that "ma[de] the 'status' of narcotic addiction a criminal offense." *Robinson v. California*, 370 US 660, 666, 82 S Ct 1417, 8 L Ed 2d 758 (1962).

The statute in *Robinson* criminalized the status of being a drug addict, regardless whether an individual actually used or possessed drugs. *Id*. at 662-63. In essence, the state sought to penalize its citizens not based on their *acts*, but their *existence*. In that unique factual scenario, the Court determined that, because "narcotic addiction is an illness *** which may be contracted innocently or involuntarily, *** a state law which imprisons a person thus afflicted as criminal, even though he has never touched any narcotic drug" violates the Eighth Amendment. *Id*. at 667.

The Court revisited *Robinson* in *Powell*, 392 US at 532, this time considering a Texas law that banned public drunkenness. A four-justice plurality interpreted *Robinson* to stand for the narrow proposition that a state could not criminalize one's status. *Id*. at 534. The plurality held that, because the Texas statute criminalized conduct—being drunk in public—rather than the status of alcoholism, the Eighth Amendment did not prohibit the state from exercising its police powers in enacting and enforcing the law. *Id*. at 532.

Four dissenting justices interpreted *Robinson* to stand for a broader principle, namely, that "criminal penalties may not be inflicted upon a person for being in a condition he is powerless to change." *Id.* at 567 (Fortas, J., dissenting). For the dissent, the statute's focus on an act was a veil for status:

> "But the essential constitutional defect here is the same as in *Robinson*, for in both cases the particular defendant was accused of being in a condition which he had no capacity to change or avoid. The trial judge sitting as trier of fact found upon the medical and other relevant testimony, that Powell is a 'chronic alcoholic.' He defined appellant's 'chronic alcoholism' as 'a disease which destroys the afflicted person's will power to resist the constant, excessive consumption of alcohol.' He also found that 'a chronic alcoholic does not appear in public by his own volition but under a compulsion symptomatic of the disease of chronic alcoholism.' I read these findings to mean that appellant was powerless to avoid drinking; that having taken his first drink, he had 'an uncontrollable compulsion to drink' to the point of intoxication; and that, once intoxicated, he could not prevent himself from appearing in public places."

*Id.* at 567-68 (Fortas, J., dissenting).

Justice White concurred in the judgment affirming the conviction based on a defect in the factual record, specifically, that the defendant had not shown that he was unable to stay off the streets on the night he was arrested. *Id.* at 552-53 (White, J., concurring). But, in so doing, White offered language that, while *dicta*, indicated at least some support for the reasoning of the dissent:

> "It is also possible that the chronic alcoholic who begins drinking in private at some point becomes so drunk that he loses the power to control his movements and for that reason appears in public. The Eighth Amendment might also forbid conviction in such circumstances, but only on a record satisfactorily showing that it was not feasible for him to have made arrangements to prevent his being in public when drunk and that his extreme drunkenness sufficiently deprived him of his faculties on the occasion in issue."

*Id.* at 551-52 (White, J., concurring).

Nevertheless, White's opinion in *Powell* stands alone. As far as United States Supreme Court jurisprudence is concerned, *Robinson* remains a solitary holding. The only successful facial challenge to the upfront use of a state's police power—*Robinson*—is limited to when that legislation targets status, not acts. Subsequently, the Court has never declared that the Eighth Amendment prohibits a state from exercising its police power to regulate acts, even purportedly "involuntary" acts.

The 4-1-4 nature of *Powell* resulted in uncertainty. Advocates and commentators have attempted to build upon *Robinson*, the *Powell* dissent, and White's concurrence, arguing that certain involuntary acts are indistinguishable from status. However, all of that discussion has occurred at the lower court level, such as before the Ninth Circuit in *Martin*. In *Martin*, 902 F3d at 1035, the Ninth Circuit construed the Eighth Amendment's applicability to a specific city code provision. There, the Boise city code at issue, *former* section 9-10-02 (2009), *amended and renumbered as* section 7-3A-2A (2014), made it a misdemeanor "for any person to use any of the streets, sidewalks, parks or public places as a camping place at any time." "Camping," for purposes of that statute, was defined to include "the *use* of public property as a temporary or permanent place of dwelling, lodging or residence, or as a living accommodation at any time between sunset and sunrise, or as a sojourn." *Id*. (emphasis added).

*Martin* held that enforcement of the ordinance "violates the Eighth Amendment insofar as it imposes criminal sanctions against homeless individuals for sleeping outdoors, on public property, when no alternative shelter is available to them." *Martin*, 920 F3d at 604. In reaching that result, the Ninth Circuit relied upon its earlier, though vacated, opinion in *Jones v. City of Los Angeles*, 444 F3d 1118, 1138 (9th Cir 2006), *vac'd*, 505 F3d 1006 (9th Cir 2007). There, the court held that "so long as there is a greater number of homeless individuals in Los Angeles than the number of available beds [in shelters]" Los Angeles could not enforce an ordinance against homeless individuals "for involuntarily sitting, lying, and sleeping in public." *Id*.

I am unpersuaded by *Martin*, for many of the reasons discussed by Justice Marshall in *Powell*, that "[t]raditional common-law concepts of personal accountability and essential considerations of federalism" preclude such an interpretation of the Eighth Amendment. *Powell*, 392 US at 535. Otherwise, there would be no "limiting principle that would serve to prevent this Court from becoming, under the aegis of the Cruel and Unusual Punishment Clause, the ultimate arbiter of the standards of criminal responsibility, in diverse areas of the criminal law, throughout the country." *Id*. at 533.

Similarly, I find the words of Justice Black, in his concurring opinion in *Powell*, compelling. He agreed with the plurality that *Robinson* was "explicitly limited *** to the situation where no conduct of any kind is involved." *Id*. at 542 (Black, J., concurring). He cautioned that the "revolutionary doctrine of constitutional law" advocated by the *Powell* dissent would "significantly limit the States in their efforts to deal with a widespread and important social problem" and would take the Court "far beyond the realm of problems for which we are in a position to know what we are talking about." *Id*. at 537-38. Black thus declined to "depart[] from *** the premise that experience in making local laws by local people themselves is by far the safest guide for a nation like ours to follow." *Id*. at 548.

I find the federalism concerns referenced by Marshall and Black especially present under the *Martin* rationale, in that *Martin* does not bar a state's police power entirely; rather, it preconditions it. Under *Martin*, whether a state has an inherent police power to regulate conduct and enforce that regulation against certain persons is a function of expenditures. If a local municipality spends sufficient monies, it has the police power to regulate, if it does not, the police power does not exist. That construction of the Eighth Amendment is unprecedented and represents a profound alteration to the federalist model of our nation.

## FACIAL VERSUS AS-APPLIED CONSTITUTIONAL CHALLENGES

Having discussed the Eighth Amendment, and why I do not join Judge Ortega, I must now explain why I am

equally unable to join the majority. To do so, I must briefly discuss the nature of constitutional challenges.

Constitutional challenges are routinely, though somewhat imprecisely, conceived of as fitting neatly within one of two boxes: facial challenges and as-applied challenges. Typically, a court considering a facial constitutional challenge compares the text of a statute against a constitutional provision asking if "'no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 US 442, 449, 128 S Ct 1184, 170 L Ed 2d 151 (2008) (internal citation omitted). Facial challenges present questions of law. They are largely not fact dependent, and a reviewing court typically does not need to defer ruling on the merits due to a deficiency in the factual record.

On the other hand, "[a]n as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." *Minnesota Majority v. Mansky*, 708 F3d 1051, 1059 (8th Cir 2013) (internal quotation marks omitted). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Id*. (internal quotation marks omitted). Consequently, an as-applied challenge is a fact-dependent inquiry. *Richmond Med. Ctr. for Women v. Herring*, 570 F3d 165, 173 (4th Cir 2009) (quoting Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv L Rev 1321, 1331 (2000)). A court may properly defer ruling on an as-applied challenge when the factual record is incomplete, because as-applied ruling must be "based on a developed factual record [showing the] application of a statute to a specific person." *Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F3d 291, 298 n 5 (4th Cir 2013) (internal citation omitted).

However, as alluded to, facial versus as-applied classifications are not necessarily discrete boxes. As the United States Supreme Court has cautioned, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings or disposition in every case

involving a constitutional challenge." *Citizens United v. Federal Election Comm'n*, 558 US 310, 331, 130 S Ct 876, 175 L Ed 2d 753 (2010). The important inquiry—and the truest indicator of whether a case presents a facial or as-applied challenge—is whether the claim and the relief that would follow is beyond the particular circumstances of the plaintiff.

In *John Doe No. 1 v. Reed*, 561 US 186, 190-91, 130 S Ct 2811, 177 L Ed 2d 493 (2010), the United States Supreme Court took up the constitutionality of the disclosure, via the State of Washington's Public Records Act, of the names and addresses of initiative petition signers. The parties disagreed about whether the issue before the Court was a facial or an as-applied challenge. As the Court explained:

> "It obviously has characteristics of both: The claim is 'as applied' in the sense that it does not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim is 'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions.
>
> "The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow * * * reach beyond the particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge to the extent of that reach."

*Id*. at 194 (internal citation omitted).

Since *Citizens United* and *John Doe No. 1*, federal courts have been increasingly sensitive to the nebulous distinction between facial versus as-applied claims. *See, e.g.*, *Center for Individual Freedom v. Madigan*, 697 F3d 464, 475 (7th Cir 2012) ("It is true that facial challenges and as-applied challenges can overlap conceptually."); *Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F3d 851, 865 (11th Cir 2013) ("[T]he line between facial and as-applied relief is a fluid one, and many constitutional challenges may occupy an intermediate position on the spectrum between purely as-applied relief and complete facial invalidation."); *Showtime Entm't, LLC v. Town of Mendon*, 769 F3d 61, 70 (1st Cir 2014) ("[T]his case highlights the sometimes nebulous nature of the distinction between facial and as-applied challenges, for Showtime's challenge does not fit neatly

within our traditional concept of either type of claim.");
*Catholic Leadership Coal. of Tex. v. Reisman*, 764 F3d 409,
426 (5th Cir 2014) (noting that "the precise boundaries of
facial and as-applied challenges are somewhat elusive—
certain challenges can have characteristics of both").

Appling *Citizens United* and *John Doe No. 1* here,
I conclude that this case presents elements of both a facial
as well as an as-applied challenge. Though this issue was
raised in an individual criminal case, and defendant sought
the dismissal of particular discrete charges, and though the
parties call it an as-applied challenge, the relief sought goes
far beyond this one defendant. At trial, defendant did not
challenge a specific fine or punishment imposed upon her.
Her challenge was raised pretrial, before any punishments
had been imposed. Her argument was that the state's inher-
ent police power was limited, by operation of the Eighth
Amendment, because of her membership in a class of per-
sons: the homeless. That type of pretrial challenge, inviting
a court to limit that state's police power proscriptively due
to class membership, obviously carries with it legal effects
beyond the individual litigant.

We need look no further than defendant's own
pleading, which asked the trial court to conclude that
"Portland's camping ordinance is unconstitutional as applied
to *the homeless* under the Eighth Amendment as cruel and
unusual punishment." (Emphasis added.) Defendant did not
argue that the ordinance was unconstitutional as applied
to *her*, based upon her unique traits, but rather that it was
unconstitutional as applied to a broader class of persons to
which she identified.

Further, at oral argument on the motion, counsel
specifically asked the trial court to broadly declare the ordi-
nance unconstitutional:

> "[DEFENSE COUNSEL]: Thank you, Your Honor.
> Before we get to the actual argument about why the
> Portland camping ordinance is unconstitutional, I just sort
> of want to address quickly the procedural posture. When
> we initially filed this motion, we filed it as a motion to dis-
> miss. And then when we filed our reply, we included in our
> footnote how, uhm, it perhaps should have been filed as a

demurrer under [ORS] 135.630 (4). Now that we're here this morning, we have had a chance to sort of re-evaluate that, and re-evaluate the posture that this motion is being brought in.

"As we know in the motion that this is an as applied challenge. And under [ORS] 135.630, we were really focusing on (4), which is the facts do not constitute an offense. Uhm, however, demurrer only really applies to a facial challenge just on the face of the complaint itself. And so we really think that this motion should just be brought as a motion to find the city—the Portland city camping ordinance unconstitutional and just leave it at that."

Later, again, counsel argued that the ordinance was broadly unconstitutional:

"[DEFENSE COUNSEL]: *** And so as we set out in both our initial motion and in our reply, there are really four arguments that we're bringing. And that is that the Portland City Code 14A.020.050 is unconstitutional. It is unconstitutional on four grounds.

"And that is that it constitutes cruel and unusual punishment as applied to Ms. Barrett who is a—because it punishes her for her status of being a homeless citizen in the city of Portland. Second is that the camping ordinance violates the equal protection clause of the United States Constitution. And then third, the ordinance is overbroad. And then, fourth, the ordinance is vague."

In concluding arguments, defense counsel asked the trial court to adopt the reasoning of *Jones*, and to similarly invalidate the ordinance as applied to the greater homeless population of the city:

"[DEFENSE COUNSEL]: I think that going to—that in its application, it is a Portland City ordinance in its application, although on its face, it applies to everybody equally. It goes to the famous quote by (inaudible), or—you know, the law in its equal majesty prohibits sleeping—prohibits the rich and the poor alike from sleeping under a bridge.

"And, here in the Portland just like in the Los Angeles ordinance where it prevents somebody from sleeping on the city streets, from sitting down on the sidewalk, so too does the Portland ordinance, with the exception that so long as that person does not place any bedding down on the

sidewalk or on the street, if it's just down by themselves, then, okay, the ordinance does not apply.

"But with the Portland homeless population, that seems to be, I guess that the phrase I used in my (inaudible) was that—is the difference by distinction, where if somebody is just trying to survive out in the city, then they are going to use something to protect themselves from the elements. So I think that's why in application it's applied just the same as the Los Angeles ordinance in preventing homeless individuals from engaging again in those basic necessities of life."

In determining whether this case presents a facial or an as-applied federal constitutional challenge, it matters not that the parties have labeled this an as-applied constitutional challenge. "The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow * * * reach beyond the particular circumstances of these plaintiffs." *John Doe No. 1*, 561 US at 194. In many respects, the caution expressed by the Supreme Court in *Bucklew v. Precythe*, ___ US ___, 139 S Ct 1112, 1127-28, 203 L Ed 2d 521 (2019), concerning an as-applied challenge under the Eighth Amendment to an execution protocol is instructive:

"Here's yet another problem with Mr. Bucklew's argument: It invites pleading games. The line between facial and as-applied challenges can sometimes prove 'amorphous,' *Elgin v. Department of Treasury*, 567 US 1, 15, 132 S Ct 2126, 183 L Ed 2d 1 (2012), and 'not so well defined,' *Citizens United*, 558 US at 331, 130 S Ct 876. Consider an example. Suppose an inmate claims that the State's lethal injection protocol violates the Eighth Amendment when used to execute anyone with a very common but not quite universal health condition. Should such a claim be regarded as facial or as-applied? In another context, we sidestepped a debate over how to categorize a comparable claim—one that neither sought 'to strike [the challenged law] in all its applications' nor was 'limited to plaintiff's particular case'—by concluding that '[t]he label is not what matters.' *Doe v. Reed*, 561 US 186, 194, 130 S Ct 2811, 177 L Ed 2d 493 (2010). To hold now, for the first time, that choosing a label changes the meaning of the Constitution would only guarantee a good deal of litigation over labels, with lawyers on each side seeking to classify cases to maximize their

tactical advantage. Unless increasing the delay and cost involved in carrying out executions is the point of the exercise, it's hard to see the benefit in placing so much weight on what can be an abstruse exercise."

This case presents that same trap of "pleading games" prophesized in *Bucklew*. While the case has been pleaded as an as-applied challenge, and while the specific remedy sought in this case was the dismissal of charges, no one involved in this litigation sought a ruling applicable only to defendant. Here, defendant was the face of a constitutional challenge that was intended to prevent enforcement of the PCC ordinance against the homeless as a community. When a party makes the decision to frame the litigation in this manner, they cannot avoid the consequences of those choices by labeling their challenge "as applied." Rather, when a case exists in the grey area of both a facial and an as-applied challenge, the litigant must "satisfy our standards for a facial challenge to the extent of that reach." *John Doe No. 1*, 561 US at 194.

When we apply the standards of a facial challenge, resolution of this case becomes straightforward. Defendant can only succeed in a facial challenge by showing that "'no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange*, 552 US at 449 (internal citation omitted). Pursuant to *Robinson*, a state's prospective exercise of police power only violates the Eighth Amendment "in all of its applications" when the statute on its face penalizes *status*. Defendant conceded at trial that she could not satisfy the burdens of such a facial challenge.

"THE COURT:   You concede that this ordinance on its face doesn't violate any constitutional provision?

"[DEFENSE COUNSEL]:   On its face, the Portland City Code ordinance does not facially violate the constitution. That's the way we just brought this as an as applied challenge."

That concession is well taken. Here, the PCC ordinance at issue defines public camping as "to set up, or to remain in or at a campsite" which is, in turn, defined as a place "where any bedding, sleeping bag, or other sleeping

matter, or any stove or fire is placed, established, or maintained." PCC 14A.50.020.[1] The statute on its face plainly targets acts, not status. The facial challenge must fail under *Robinson*. I am, therefore, compelled to affirm on the merits.

In reaching my decision to affirm on the merits of the Eighth Amendment claim, however, it bears emphasis that the question before us is narrow. We are asked only to assess the enforcement of Portland's anticamping ordinance against the homeless using the yardstick of the Eighth Amendment. Axiomatically, the federalism concerns that exist when interpreting the Eighth Amendment's constraints on plenary state power are not present when considering limits on that power that may exist pursuant to the state constitution. Similarly, *John Doe No.1*'s distinction between facial and as-applied challenges applies to federal constitutional claims, not state constitutional claims. However, defendant does not develop a distinct argument under Article I, section 16, of the Oregon Constitution. Likewise, defendant here offers no federal constitutional basis for a limitation on state plenary power apart from the Eighth Amendment.[2]

My judgment on that singular question before us—whether one specific provision to the United States

---

[1] The ordinance at issue in this case is PCC 14A.50.020, which reads, in pertinent part:

"(A) As used in this Section:

"(1) 'To camp' means to set up, or to remain in or at a campsite, for the purpose of establishing or maintaining a temporary place to live.

"(2) 'Campsite' means any place where any bedding, sleeping bag, or other sleeping matter, or any stove or fire is placed, established, or maintained, whether or not such place incorporates the use of any tent, lean-to, shack, or any other structure, or any vehicle or part thereof.

"(B) It is unlawful for any person to camp in or upon any public property or public right of way, unless otherwise specifically authorized by this Code or by declaration by the Mayor in emergency circumstances.

"(C) The violation of this Section is publishable, upon conviction, by a fine of not more than $100 or imprisonment for a period not to exceed 30 days or both."

[2] Some scholars have considered whether plenary state power might be independently limited by the Ninth and Fourteenth Amendments. *See, e g.*, Randy E. Barnett, *The Proper Scope of the Police Power*, 79 Notre Dame L Rev 429, 429-95 (2004).

Constitution prohibits local enforcement of a specific provision of a city code—is not the same as passing judgment on the propriety, or the humanity, of that enforcement. At the Hubert Humphrey Building dedication in Washington, D. C., on November 1, 1977, former Vice President Humphrey said that "the moral test of government is how that government treats those who are in the dawn of life, the children; those who are in the twilight of life, the elderly; and those who are in the shadows of life; the sick, the needy and the handicapped." That there exist among us those who, through happenstance or ill-fortune, have nowhere to lay their head—no shelter, no safety, no sanctuary—is a profound indictment of our society. There can be no doubt that there is a moral and ethical imperative to address homelessness in our state. And, as homeless encampments throughout Oregon bear witness, our collective response has yet to meet the challenge. The frustration by all—the homeless, land owners, merchants, and the citizenry at large—is real. But impetus for action must find its roots in different soil than the Eighth Amendment.

Egan, C. J., joins in this concurrence.